UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:09-cv-00203

United Guaranty Residential Insurance
Company of North Carolina,

            Plaintiff,

   vs.

Countrywide Financial Corp., and
Countrywide Home Loans, Inc.,

            Defendants.

**Memorandum In Support Of Motion To Stay Based On**

**Judicial Efficiency Grounds In Light Of Earlier-Filed And**

**More Comprehensive Action, Or In The Alternative,**

**To Compel Arbitration**

# TABLE OF CONTENTS

Page

I.  STATEMENT OF NATURE OF MATTER AND QUESTIONS PRESENTED .. 1

II. FACTS PERTINENT TO THIS MOTION ........................................................... 2

    A.  Factual And Procedural Background ........................................................ 2

    B.  The Agreement To Arbitrate And Related Facts ......................................... 8

III. ARGUMENT ................................................................................................. 9

    A.  Under Colorado River, Federal Courts Are Advised To Conserve Judicial Resources And Discourage Vexatious Litigation ...................................... 10

    B.  The Court Should Stay This Action As A Matter Of Comity And Judicial Administration And Convenience ............................................................ 11

        1.  This Action Is "Parallel" To The State Court Action ...................... 11

        2.  The Colorado River Factors Decisively Favor A Stay ................... 11

    C.  If The Court Does Not Stay The Action, It Should Enter An Order Compelling Arbitration Of All Claims ...................................................... 16

        1.  Governing Principles ................................................................. 16

        2.  The Bulk Policy Compels Arbitration Of This Case ..................... 16

IV. CONCLUSION ............................................................................................ 20

# TABLE OF AUTHORITIES

**Page**

## Cases

Allied-Bruce Terminix Cos. Inc. v. Dobson, 513 U.S. 265, 277 (1995) .......................... 17

American Bankers Ins. Group, Inc. v. Long, 453 F.3d 623 (4th Cir. 2006) ..................... 19

Arrants v. Buck, 130 F.3d 636, 641 (4th Cir. 1997) ......................................................... 19

Automated Sys. and Programming, Inc. v. Cross, 176 F.Supp.2d 458, 463 (D. Md. 2001) ................................................................................................................................ 13

Brantley v. Republic Mortgage Ins. Co., 424 F.3d 392, 395-96 (4th Cir. 2005) ............. 19

Citizens Bank v. Alafabco, 539 U.S. 52, 57-58 (2003) .................................................... 17

Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 818 (1976) ................................................................................................................................ 10

Covance Labs., Inc. v. Orantes, 338 F. Supp. 2d 613, 619 (D. Md. 2004) ...................... 11

Gannett Co Inc. v. Clark Constr. Group, Inc., 286 F.3d 737 (4th Cir 2002) ................... 13

Holland v. Hay, 840 F. Supp. 1091, 1102 (E.D. Va. 1994) .............................................. 14

Ingersoll-Rand Financial Corp. v. Callison, 844 F.2d 133, 137 (3d Cir.1988) .............. 15

Landis v. North Am. Co., 299 U.S. 248, 254 (1936) ........................................................ 16

Learning Network, Inc. v. Discovery Commc'ns, Inc., 11 Fed. Appx. 297, 300-01 (4th Cir. 2001) ................................................................................................................. 10

Long v. Silver, 248 F.3d 309, 320 (4th Cir. 2001) ........................................................... 20

Lumen Constr., Inc. v. Brant Constr. Co., 780 F.2d 691, 695 (7th Cir. 1986) ................ 16

Preston v. Ferrer, 128 S. Ct. 978, 981 (2008) ................................................................. 17

R.J. Reynolds Tobacco Co. v. Star Scientific, Inc., 169 F. Supp. 2d 452, 455 (M.D.N.C. 2001) ............................................................................................................. 10

Royal Indemnity Co. v. Apex Oil Co., 511 F.3d 788, 796-97 (8th Cir. 2008) ................ 15

Sokkia Credit Corp. v. Bush, No. A.99-2480-GTV, 2000 WL 1472746, *3 (D. Kan. 2000) ...................................................................................................................... 15

Sto Corp. v. Lancaster Homes, Inc., 11 Fed. Appx. 182, 186 (4th Cir. 2001) ................ 11

Summer Rain v. Donning Co. Publishers, Inc., 964 F.2d 1455, 1461 (4th Cir. 1992) ................................................................................................................................ 16

Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir. 1993) ................................................................................................................................ 20

Ventana Press, Inc. v. Fraase, No. 1:95-CV-407 JAB, 1995 WL 17804141, at *4 (M.D.N.C. 1995)............................................................................................................ 18

## **Statutes**

9 U.S.C. §§3-4 ............................................................................................................ 17

9 U.S.C. §2 ................................................................................................................... 17

Defendants Countrywide Financial Corp. ("Countrywide Financial") and Countrywide Home Loans, Inc. ("Countywide Home") (collectively, "defendants" or "Countrywide") hereby submit this memorandum in support of their motion to stay this action pending resolution of a parallel and more comprehensive action, or in the alternative, to compel arbitration pursuant to a contractual agreement to arbitrate.

## I.    STATEMENT OF NATURE OF MATTER AND QUESTIONS PRESENTED

In March 2009, United Guaranty, an American International Group affiliate, declared it would no longer pay claims under many policies insuring billions of dollars in mortgage loans held or arranged by certain Countrywide entities. Countrywide Home, Countrywide Bank, FSB, and Countrywide Home Loans Servicing LP ("Servicing LP") then filed a comprehensive action in California state court based on all the disputed policies and initiated arbitration under all policies that contain an arbitration clause. In response, United Guaranty has attempted to fragment the dispute into piecemeal actions. Its sister company filed an action against Countrywide Home and Countrywide Financial in the United States District Court for the Central District of California relating to a subset of the policies at issue in the California state court action. United Guaranty then filed this action relating to a different subset of those policies, and it separately initiated arbitration with the trusts that hold the loans insured under the same policies at issue here. In both federal actions, to permit diversity jurisdiction, United Guaranty omitted to join Servicing LP, a named insured under the policies at issue in the California federal action and the entity charged with the duty to prosecute claims under one of the policies at issue in this action. Finally, on the last day on which a notice of removal could be filed, United Guaranty removed the state court action to the Central District of California.

These United Guaranty maneuvers give rise to three sets of issues: (1) as detailed in defendants' pending Rule 12 motion to dismiss, United Guaranty's failure to join the indispensable Servicing LP and other deficiencies warrant dismissal of this action, or

certain causes of action, (2) the Court should stay this action on judicial administration and convenience grounds to permit the more comprehensive and earlier filed California state court action to proceed,[1] and (3) United Guaranty's claims in this action are arbitrable because they relate to policies that contain a clause requiring arbitration of any dispute "arising out of or relating to" those policies.

Defendants respectfully request the Court first decide the portion of this motion that requests a stay to permit the earlier-filed and more comprehensive state court action to proceed. If the Court grants that request, it need not reach the Rule 12 or arbitrability questions and may instead leave the threshold viability of United Guaranty's allegations and the arbitrability of those claims to be decided in the state court action. The court that hears that action will have all of the disputed policies and arbitrability issues before it and therefore is in a superior position to decide as an initial matter which issues should be heard in which forum. And that arbitrability determination, in turn, will inform which issues need be addressed in court in a threshold pleadings challenge.

In the event the Court declines to stay this action, defendants have briefed the Rule 12 arguments in a separate memorandum, and the arbitrability issues below.

## II. FACTS PERTINENT TO THIS MOTION

### A. Factual And Procedural Background

Mortgage insurance covers lenders in the event a borrower defaults on a loan and the lender is unable to recover its costs through its security interest. (United Guaranty's Complaint, filed March 20, 2009, Doc. 1 ("Complaint") ¶21) United Guaranty has for four decades worked closely with Countrywide and has entered many complex insurance transactions covering large pools of loans. (*Id.* ¶24) In multiple separate transactions

---

[1]  Countrywide will be moving to remand United Guaranty's attempted removal of the state court action. But regardless of how that remand motion is decided, for the reasons stated below, the Court should either stay this action in favor or the more comprehensive California action or compel arbitration of this action.

between 2005 and 2007, United Guaranty issued policies insuring billions of dollars worth of loans pooled and held in Countrywide mortgage-loan-backed securitizations or in Countrywide Bank FSB's own mortgage portfolios. (*Id.* ¶¶3, 38-39, 41-42)

The policies followed one of four forms (1) a "Master Policy" insuring first lien mortgage loans (Ellison Decl. in Support of Mot. To Dismiss, filed April 14, 2009, Doc. 7-3 ("Ellison Decl."), Ex. 1, at ¶¶17-18), (2) a "Pool Policy" insuring first lien loans (*id.* ¶29-30); (3) a "Bulk Policy" insuring second lien home equity lines of credit (*id.* ¶43; Bulk Policy; Mot. to Dismiss, Ex. B); and (4) an "Accumulation Policy" insuring other second lien loans. (Ellison Decl., Ex. 1, ¶57) The Bulk and Accumulation Policies contain a clause that requires arbitration of all disputes "arising out of or relating to" the policy, but that permits the parties to seek a declaratory judgment on matters of interpretation of the policy. (*Id.* ¶41; Bulk Policy, Mot. to Dismiss, Ex. B, ¶6.5)

In the securitized transactions, a Countrywide entity sold pools of loans to a special purpose trust that then used the loans as collateral for certificates or notes that were sold to investors. (Complaint ¶39) Countrywide Home arranged for United Guaranty to insure the loans underlying the securitization. (Complaint ¶¶41-42) The participants in the transaction typically executed several documents:

(1) The Master Servicer for each securitization (Countrywide Home or Servicing LP for all nine securitizations at issue) the securitized trust, the trustee, and others executed a written agreement (titled in some instances a "Pooling and Service Agreement," in others a "Sale and Servicing Agreement") setting forth the rights and duties of those parties regarding the securitization. (*See, e.g.,* Pooling and Servicing Agreement, Dated as of March 1, 2006, Ex. 1 to Decl. of Elizabeth K. Chen in Support of Mot. to Dismiss, Doc. 8 ("Chen Decl.").) Parties to the securitization also executed other documents that formed the securitized trust. (*See, e.g., id.*)

(2)     United Guaranty and the named insureds (typically the trustee of the securitized trust in the case of the nine Bulk Policy contracts at issue in this action) were parties to the insurance policies. (Complaint ¶4)

(3)     Prior to issuance of each policy, Countrywide Home and United Guaranty, and in some instances the trustee, executed a Commitment Letter describing a proposed mortgage insurance transaction and granting United Guaranty broad access to information for any due diligence it chose to conduct before issuing the insurance. (*See* Commitment Letter, Mot. to Dismiss, Ex. A)

In March 2009, United Guaranty and its affiliates declared they would no longer recognize coverage under many policies. Accordingly, on March 18, 2009, Countrywide Bank, FSB, Countrywide Home and Servicing, LP filed an action in Los Angeles County, California Superior Court against the reneging United Guaranty companies, *Countrywide Bank, FSB v. United Guaranty Mortgage Indem. Co., et al.*, No. BC409996 ("State Court Action"). (Ellison Decl., Ex. 1) In that Action, the Countrywide entities seek declaratory relief regarding the securitized and portfolio loans insured under sixteen Bulk Policy contracts, including all nine Bulk Policy contracts at issue here, and six Accumulation Policy contracts. They also assert breach of contract and other claims relating to loans insured under fifteen Master Policy contracts. The Countrywide entities also initiated arbitration of its claims relating to all twenty-two disputed Bulk and Accumulation Policy contracts under the arbitration clauses in those Policies.

On March 19, 2009, the day after learning about the State Court Action, United Guaranty's sister company filed an action in California federal court, *United Guaranty Mortgage Indem. Co. v. Countrywide Financial Corp., et al.*, No. CV09-1888 RZ (C.D. Cal.) ("CA Federal Action"), which includes claims for rescission of eleven Master Policy contracts—all of which already were at issue in the State Court Action. (Ellison Decl., Ex. 2) To obtain diversity jurisdiction, United Guaranty's affiliate did not join

Servicing LP as a defendant, even though Servicing LP is defined as an "insured" under the Master Policy that United Guaranty's affiliate was seeking to rescind.

The next day, United Guaranty filed this action against Countrywide Home and Countrywide Financial. (*See* Complaint) Here, United Guaranty alleges that Bank of New York Mellon Trust of Delaware and Wells Fargo Bank, NA (collectively, the "Trustees") entered into nine Bulk Policy contracts with United Guaranty to cover mortgage loans that backed nine securitizations. (Complaint ¶¶3-4, 39-42) As noted, all nine contracts already were and are at issue in the State Court Action. Here, United Guaranty alleges the Commitment Letters that preceded those nine policies imposed contractual obligations on Countrywide Home and Countrywide Financial that they breached, and that those same circumstances support tort or Chapter 75 unfair trade practice act claims. But again, United Guaranty did not join Servicing LP in this action. Accordingly, Countrywide moved to dismiss each federal action based on United Guaranty's failure to join the indispensable Servicing LP. United Guaranty also initiated arbitration as to the identical nine Bulk Policy contracts with the Trustees based on the Bulk Policy's arbitration clause. (*See* Complaint ¶ 73; Demand for Arbitration, dated March 23, 2009, Ex. A to Declaration of John Ellison in Support of Motion to Stay or to Compel Arbitration, dated April 22, 2009 ("Ellison Stay Decl.").)

The multiple complaints and arbitrations and the parties' competing views of this dispute reveal a common core of factual and legal questions. Countrywide's view, for example, is as follows: As United Guaranty's parent AIG revealed that it was, once again, on the brink notwithstanding the earlier infusion of federal funds,[2] United

---

[2]   *See* U.S. Treasury and Federal Reserve Board Announce Participation in AIG Restructuring Plan (Mar. 2, 2009), http://www.treas.gov/press/releases/tg44.htm (last visited 4/9/09) (announcing how Treasury is taking increased steps to stabilize AIG because AIG "continues to face significant challenges"); Andrew R. Sorkin and Mary W. Walsh, *AIG Reports Loss of $61.7 Billion as U.S. Gives*

Guaranty repudiated all policy obligations in bad faith. In repudiating, it has attempted to portray a rash of borrower defaults in a deep economic recession as the product of Countrywide's underwriting practices. In this regard, it is noteworthy that United Guaranty's own CA Federal Action complaint recites that in 2007, it rescinded coverage in nearly 50% of the instances in which claims were made against its policies arranged by Countrywide. (Ellison Decl., Ex. 2 ¶ 62) Yet, until March 2009, United Guaranty continued to collect premiums and decide claims on a loan-by-loan basis, paying some and denying or rescinding others. Only after AIG revealed it again was running out of money did United Guaranty declare a "fraud" that supposedly entitled it to reject all policy obligations altogether. The additional knowledge that triggered this announcement was, according to its CA Federal Action complaint, the fact that 55% of the loan files contained deficiencies or failed to meet Countrywide's underwriting guidelines. (*Id.* ¶67)

In other words, in 2007, United Guaranty decided that a 50% deficiency rate warranted its continued collection of premiums and claim-by-claim decisions. But in March 2009, a 55% deficiency rate justified United Guaranty ceasing to pay all claims—including the 45% that even it effectively admitted were valid.

United Guaranty's story, by contrast, is that Countrywide failed to adhere to proper underwriting guidelines in approving the insured loans. It also fills its complaint with irrelevant allegations concerning unrelated litigation against Countrywide entities or their former executives. The irrelevant material aside, the competing views reveal that the various actions will each involve examination of the same factual and legal points, including: (a) United Guaranty's pre-contractual opportunity to review the very files it

---

*More Aid*, NY Times, March 2, 2009, *available at* http://www.nytimes.com/2009/03/03/business/03aig.html r=1.

now claims demonstrate a contract breach or fraud; (b) why United Guaranty chose to continue to collect premiums and decide claims on a claim-by-claim basis after it conducted the file review that it now says reveals a fraud; (c) Countrywide's underwriting of the loans covered by the various policies; and (d) the legal implications of those factual points.

Consistent with the common factual and legal questions, Countrywide's first-filed State Court Action and related arbitrations seek a comprehensive resolution of all the issues and policies and each Countrywide filing includes Servicing LP as a party.

United Guaranty, by contrast, seeks to split its arbitration relating to the nine Bulk Policy contracts at issue here from this action concerning the Commitment Letters relating to the same nine Bulk Policy contracts. It seeks to further separate those adjudications from the adjudication in the State Court Action of the claims relating to those identical nine Bulk Policy contracts, as well as from the adjudication of the other seven Bulk Policy contracts at issue in the State Court Action. And it also seeks to split all of those adjudications from the CA Federal Action. Last but not least, United Guaranty refuses to name Servicing LP in any of these piecemeal matters because its joinder of Servicing LP defeats diversity jurisdiction.

Additionally, to further stymie the first-filed State Court Action, United Guaranty filed a notice of removal of that Action to the Central District of California on April 20, 2009 (see Notice of Removal, Ellison Stay Decl., Ex. B), the last day on which a removal notice could be filed. 28 U.S.C. §1446(b). United Guaranty's removal notice asserts that the citizenship of Servicing LP should be disregarded for purposes of determining diversity jurisdiction.[3] Its removal papers included a notice stating that the State Court

---

[3] That claim raises the question why United Guaranty went to such lengths to omit Servicing LP from its earlier piecemeal federal court filings, and why it did not simply remove the State Court Action rather than filing a duplicative CA Federal Action.

Action is related to the North Carolina action "because the claims arising in [the State Court Action] are based on mortgage insurance policies that give rise to the claims asserted in the North Carolina Action, and because the parties in this action include plaintiffs and defendants in the North Carolina Action." (*See* Ellison Stay Decl., Ex. C) It also filed another notice that stated the California Federal Action was related to the State Court action "because the claims asserted in [the State Court Action] are based on mortgage insurance policies that give rise to the claims asserted in [the CA Federal] Action, and because the parties in this action include plaintiffs and defendants in [the CA Federal] Action." (*See* Ellison Stay Decl., Ex. D)

## B. The Agreement To Arbitrate And Related Facts

The Bulk Policy's arbitration provision states:

### 6.5 Arbitration of Disputes; Suits and Actions Brought By the Insured

(a)    Unless prohibited by applicable law, or otherwise mutually agreed by the Company and Insured, all controversies, disputes or other assertions of liability or rights arising out of or relating to this Policy, including the breach, interpretation or construction thereof, shall be settled by arbitration. Notwithstanding the foregoing, the Company or the Insured both retain the right to seek a declaratory judgment from a court of competent jurisdiction on matters of interpretation of this Policy.

(Bulk Policy, Motion to Dismiss, Ex. B)

Pursuant to the terms of certain Sale and Servicing Agreements executed when the securitizations covered under the Bulk Policy were formed, Countrywide Home was specified as Master Servicer in several securitizations (*i.e.*, CWHEQ 2005-F, CWHEQ 2006-A, CWHEQ 2006-B, CWHEQ 2006-C, CWHEQ 2006-D, CWHEQ 2006-E, CWHEQ 2006-F, CWHEQ 2006-H).[4]    As such, those Agreements delegated to Countrywide Home the authority to take all appropriate actions under the Bulk Policy

---

[4]   Servicing LP was specified as the Master Servicer for the CWHEQ 2006-S1 securitization.

contracts applicable to those securitizations to ensure that United Guaranty performs its obligations under the relevant Policy. A typical Sale and Servicing Agreement provides:

> The Master Servicer shall service and administer the Mortgage Loans in a manner consistent with the terms of this Agreement and with general industry practice and shall have full power and authority, acting alone or through a subservicer, . . . to collect any Insurance Proceeds and other Liquidation Proceeds. . . .
>
> * * *
>
> The Master Servicer shall prepare and [timely] submit all claims eligible for submission under the [Bulk] Policy and shall perform all of the obligations of the insured under the [Bulk] Policy.

(*See* Sale and Serv. Agreement (March 30, 2006) §§ 3.01(a), 3.12, Chen Decl., Ex. 2)

For their parts, the signatories to the Bulk Policy expressly recognized Countrywide Home's delegated authority to act for the Insured because the Bulk Policy provides that the "Servicer" acts "as the agent of the Insured for all purposes" under the Bulk Policy "including receiving any notices and performing any acts under the Policy." (*See* Bulk Policy, § 1.41, Motion To Dismiss, Ex. B)

## III. ARGUMENT

On the one hand, this action is unnecessary because the court that hears the State Court Action is an adequate (if not preferable) forum. On the other hand, this action will unnecessarily waste judicial resources on duplicative litigation and risk inconsistent results. Since this Court has broad and inherent authority to control its own docket, it should avoid those problems by staying the case as a matter of judicial administration and convenience. In doing so, it would avoid the need to decide whether these claims are arbitrable, and if so, to which of the multiple pending arbitrations concerning the same Bulk Policy contracts the claims should be referred. Since all of those arbitrability issues are posed in the State Court Action, the court that hears that action may resolve those

- 9 -

issues in an efficient, comprehensive and uniform manner. In the event the Court declines to stay this action, defendants also show below that all claims are arbitrable.

**A.    Under *Colorado River*, Federal Courts Are Advised To Conserve Judicial Resources And Discourage Vexatious Litigation**

Under the *Colorado River* doctrine, a federal court may abstain from exercising its jurisdiction in favor of concurrent and parallel state proceedings where doing so would serve the interests of "wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 818 (1976). The Court may likewise stay proceedings in deference to earlier-filed, parallel federal litigation. *See Colorado River,* U.S. 424 at 817 ("As between federal district courts . . . the general principle is to avoid duplicative litigation."); *Learning Network, Inc. v. Discovery Commc'ns, Inc.,* 11 Fed. Appx. 297, 300-01 (4th Cir. 2001) (recognizing "first-to-file" rule whereby, as between parallel federal court actions, the first-filed case should proceed); *R.J. Reynolds Tobacco Co. v. Star Scientific, Inc.,* 169 F. Supp. 2d 452, 455 (M.D.N.C. 2001) (court may "dismiss, transfer, or stay" an action in favor of earlier-filed federal action).

Thus, since United Guaranty has removed the State Court Action to federal court in California, this Court should stay this case under a straightforward application of the first-to-file rule. As defendants now explain, moreover, even if the California federal court remands the State Court Action, the stay should continue under *Colorado River.*

"For a district court to abstain under the *Colorado River* doctrine, two conditions must be satisfied: (1) parallel proceedings are ongoing in state and federal court, and (2) 'exceptional circumstances' counsel in favor of abstention," as demonstrated through an analysis of several well-established factors. *Covance Labs., Inc. v. Orantes*, 338 F. Supp. 2d 613, 619 (D. Md. 2004) (citation omitted).

**B. The Court Should Stay This Action As A Matter Of Comity And Judicial Administration And Convenience.**

    **1. This Action Is "Parallel" To The State Court Action**

"Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Sto Corp. v. Lancaster Homes, Inc.*, 11 Fed. Appx. 182, 186 (4th Cir. 2001) (citation omitted). Every policy at issue in this action was at issue in the State Court Action when United Guaranty filed this case, and all its claims here may be raised in that Action or the related arbitration. Accordingly, the actions are "parallel." Indeed, in its California removal papers, United Guaranty identifies this action as being "related" to the State Court Action. (Ellison Stay Decl., Ex. C)

    **2. The *Colorado River* Factors Decisively Favor A Stay**

"Six factors have been identified to guide the analysis for *Colorado River* abstention: (1) whether the subject matter of the litigation involves property where the first court may assume jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights." *Vulcan Chem. Tech, Inc. v. Barker*, 297 F.3d 332, 340-41 (4th Cir. 2002) (citations omitted). The United States Supreme Court has also noted another consideration: "the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River.*" *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 17 n.20 (1983). These "factors are to be applied 'in a pragmatic, flexible manner with a view to the realities of the case at hand.'" *Sto Corp.*, 11 Fed. Appx. at 187 (quoting *Moses H. Cone*, 460 U.S. at 2).

These criteria overwhelmingly favor a stay here.

### (a)    Factors 1-2 (Whether Case Involves *Res*, Convenience Of Forum).

The first factor is irrelevant or of no weight since this case does not involve a dispute over property over which only one forum may exercise jurisdiction. Similarly, the second factor is neutral, as each forum has convenience pros and cons that balance each other out with the respective witnesses and documents of each party generally in proximity to the court in which each suit was filed.

### (b)    Factor 3 (Desire To Avoid Piecemeal Litigation)

The interest in avoiding piecemeal litigation overwhelmingly favors a stay. This is a complex dispute. Under United Guaranty's proposed splintering of the dispute, multiple proceedings would each be addressing the exact same contracts and issues.

In some instances, Commitment Letters would be separated from the very Policies to which they relate—even though United Guaranty itself ties the Commitment Letters to the Policies in its allegations. In addition to the colossal waste of resources in having the substantive factual and legal issues involving the same contracts or identically worded policies replicated in multiple proceedings, further resources would be wasted on endless procedural fencing regarding which forum gets to take up which issues and when. And the piecemeal actions risk inconsistent results and lingering uncertainty as to the parties' rights and obligations regarding coverage for billions of dollars of loans.

Even ordinary piecemeal litigation concerns support deferral. *Vulcan*, 297 F.3d at 342 (finding that even where "piecemeal litigation was not overwhelming," but "still lurked as a possibility," abstention was appropriate); *Automated Sys. and Programming, Inc. v. Cross*, 176 F. Supp. 2d 458, 463 (D. Md. 2001) (noting "paramount" consideration should be given to the "avoidance of piecemeal litigation"). Given the importance of clear, speedy and uniform resolution of the dispute, this case presents *extraordinary* piecemeal litigation concerns. A stay in deference to the State Court Action would avoid

those concerns by permitting one court with all the policies before it to determine what claims are arbitrable and to then proceed efficiently to decide all non-arbitrable issues.

### (c)    Factor 4 (Order In Which Courts Obtained Jurisdiction).

The earlier filing of the state court action favors deference; *see, e.g., Cross*, 176 F. Supp. 2d at 463, albeit only modestly so in light of the close timing of the respective filings. *Gannett Co Inc. v. Clark Constr. Group, Inc.*, 286 F.3d 737 (4th Cir 2002).

### (d)    Factor 5 (Whether State Law Provides The Rule Of Decision)

This action is based on purported diversity of citizenship and does not raise federal law issues. Thus, this factor also forcefully favors abstention. *Cross*, 176 Fed. Supp. 2d at 463 ("The applicable law was 100% state-based, *viz.* the law of fraud.... This factor, too, points forcefully to abstention."); *Orantes*, 338 Fed. Supp. 2d at 618 ("[T]his litigation poses no question of federal law, a factor which 'points forcefully toward abstention.'").

### (e)    Factor 6 (Adequacy Of State Forum)

The adequacy of the alternative judicial and arbitral forums also points decisively toward deferral. *See, e.g., Colorado River*, 424 U.S. at 819 (favoring deference if state court action presents a comprehensive and unified proceeding that will reach all of the federal plaintiff's claims); *Orantes*, 338 F. Supp. 2d at 619 (favoring deference because federal complaint raised no issue that the state court was not fully capable of resolving).

### (f)    Other Compelling Factors (Avoiding Forum Shopping, Comity)

A stay also is warranted because this action was filed for the purpose of "sidestepping" an earlier action. As one court put it in response to a similar maneuver:

> In the instant suit, it appears that plaintiffs filed the federal court action in order to sidestep the Georgia court's jurisdiction and reverse the roles of the parties. Plaintiffs filed this action only after their attempts to remove the case to federal court and avoid the Georgia state court's jurisdiction failed.

- 13 -

Hence, a stay or dismissal is warranted as a means to deter vexatious use of the courts.

*Holland v. Hay*, 840 F. Supp. 1091, 1102 (E.D. Va. 1994).

Here, the actions were the reverse. United Guaranty filed its federal actions in the apparent belief that it could not remove the State Court Action. After the parties met and conferred regarding Countrywide's intent to move for a stay of the California Federal Action on grounds similar to this motion, United Guaranty attempted to remove the State Court Action. These elaborate attempts to avoid the perfectly adequate state court forum are the type of forum shopping maneuvers that strongly favor a stay.

### (g)     Concerns That Are Immaterial Or Should Have No Weight

The above compelling reasons to stay the case render immaterial the fact that the Commitment Letters contain a clause specifying North Carolina as the forum for litigation. The applicability of that clause is premature at this juncture and should be left to the Court that hears the State Court Action in the first instance. *See, e.g., Sokkia Credit Corp. v. Bush*, No. A.99-2480-GTV, 2000 WL 1472746, at *3 (D. Kan. 2000) ("[T]he forum selection clause in the parties' lease, which designates Kansas as the choice of forum, is currently before the Alabama state court. The court finds it prudent to stay these proceedings pending a decision by the Alabama state court as to the parties' choice of forum clause."); *see also Ingersoll-Rand Financial Corp. v. Callison*, 844 F.2d 133, 137 (3d Cir. 1988) (staying action to collect on promissory note, in federal court by virtue of diversity jurisdiction, pending outcome of debtor's state court suit to rescind note as having been obtained in violation of federal securities laws, notwithstanding choice of forum clause, where state court assumed jurisdiction first, state law was applicable to collection action, and debtor, as federal securities law plaintiff, was entitled to his choice of forum); *Royal Indemnity Co. v. Apex Oil Co.*, 511 F.3d 788, 796-97 (8th Cir. 2008) (staying federal action in favor of parallel state court action in Illinois because,

among other things, "the issues in both proceedings [were] the same . . . [a]ll the necessary parties [were] joined in the Illinois lawsuit . . . [and] [e]ven if the choice of law analysis led to choosing Missouri law, the Illinois state court [was] perfectly capable of applying Missouri state law in its case").

Finally, it also is of no moment that *Colorado River* applies only in exceptional circumstances, and federal courts generally have an "unflagging obligation" to exercise jurisdiction when it is invoked. *See Colorado River*, 424 U.S. at 817; *Vulcan*, 297 F.3d at 340. Those principles are of diminished relevance here because defendants seek only to *stay* this action, rather than to *dismiss* it on abstention grounds. "[A]n Order merely staying the action does not constitute abnegation of judicial duty. On the contrary, it is a wise and productive discharge of it. There is only postponement of decision for its best fruition." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996) (citation omitted); *see also Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 695 (7th Cir. 1986) (staying federal action where "state court litigation [would] probably eliminate the need for any further proceedings in federal court"); *Orantes*, 338 F. Supp. 2d at 619 (staying action in deference to state proceedings); *Cross*, 176 F. Supp. 2d at 463 (same).

Indeed, this Court has broad power independent of the abstention doctrine to stay proceedings as part of its inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936); *Summer Rain v. Donning Co. Publishers, Inc.*, 964 F.2d 1455, 1461 (4th Cir. 1992) ("The decision whether to stay the litigation . . . is a matter largely within the district court's discretion to control its docket.").

In short, a stay is overwhelmingly warranted by the interests of efficiency, judicial economy, avoiding forum shopping and the fragmenting of a dispute raising common questions and involving common contracts or contractual language. By staying this action, the Court would ensure that all non-arbitrable issues are litigated in a single

action—the State Court Action—and the arbitrable issues decided in arbitration. No factors weigh strongly against a stay, moreover. The Court should therefore stay this case.

### C. If The Court Does Not Stay The Action, It Should Enter An Order Compelling Arbitration Of All Claims

#### 1. Governing Principles

The Federal Arbitration Act (the "Act") "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 128 S. Ct. 978, 981 (2008). The Act governs any contract that facilitates interstate commercial transactions or directly or indirectly affects commerce between states — such as the substantial commercial contracts at issue here. 9 U.S.C. §2; *Allied-Bruce Terminix Cos. Inc. v. Dobson*, 513 U.S. 265, 277 (1995) (noting the FAA's scope coincides with that of the Commerce Clause); *Citizens Bank v. Alafabco*, 539 U.S. 52, 57-58 (2003) (holding that even though debtor and creditor were both located within same state, FAA governed debt restructuring agreement because debt was incurred for purpose of conducting interstate business).

The Act "supplies not simply a procedural framework applicable in federal courts; it also calls for the application, in state as well as federal courts, of federal substantive law regarding arbitration." *Preston*, 128 S. Ct. at 981. Congress's intent was "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Id.* at 986 (quoting *Moses H. Cone,* 460 U.S. at 22). A party to an enforceable arbitration agreement is entitled to an order compelling arbitration of the arbitrable issues. *See* 9 U.S.C. §§3-4.

#### 2. The Bulk Policy Compels Arbitration Of This Case

The Bulk Policy's arbitration provision is broad in scope and applies to "all controversies, disputes or other assertions of liability or rights *arising out of or relating to*

[the] Policy, including the breach, interpretation or construction thereof. . . . " (Bulk Policy, §6.5, Motion to Dismiss, Ex. B)[5]

Although Countrywide Home is not a signatory to the Bulk Policy, it is entitled to invoke the arbitration provision in that Policy to compel United Guaranty to arbitrate disputes regarding coverage on two grounds: (1) Countrywide Home is an agent of the insured under the Bulk Policy; and (2) under the "equitable estoppel" or "intertwined claims" doctrine, because issues United Guaranty raises under the Commitment Letters are intertwined with claims under the Bulk Policy.

For those securitizations in which Countrywide Home acts as Master Servicer, it is an agent of the insured under the Bulk Policy's terms (*see* Bulk Policy, § 1.41) and the terms of the Sale and Servicing agreements related to the Bulk Policy (*see* Chen Decl., Ex. 2, §3.01). As such it may compel arbitration under the Bulk Policy. *See, e.g.,* *Arrants v. Buck*, 130 F.3d 636, 641 (4th Cir. 1997) (introducing broker may take advantage of arbitration clause in client-clearing broker agreement if introducing broker is agent of clearing broker); *Collie*, 345 Fed. Supp. 2d at 562 (permitting "non-signatory agents" to "avail themselves of the protection of their principal's arbitration agreement" under common law agency principles).

In addition, Countrywide also is entitled to compel arbitration under the Bulk Policy based on the "equitable estoppel" doctrine. Under this doctrine, United Guaranty is "equitably estopped" from refusing to arbitrate Countrywide Home's claims under the

---

[5] This Court has interpreted this type of arbitration clause to include fraud claims, as well as breach of contract claims, if the claims are "related to" a dispute arising under the agreement. *Ventana Press, Inc. v. Fraase*, No. 1:95-CV-407 JAB, 1995 WL 17804141, at *4 (M.D.N.C. 1995) ("[C]ommon law misrepresentation, consumer fraud, injury to business reputation" are covered under the "arising out of or related to" language in an arbitration clause if the claims are "related to a dispute arising under the contract."); *Collie v. Wehr Dissolution Corp.*, 345 F. Supp. 2d 555, 557, 563 (M.D.N.C. 2004) (clause requiring arbitration of any dispute arising out of employment or termination of employment encompassed tort and statutory claims). As discussed below, all of the claims "relate to" a dispute "arising under" the Bulk Policy, and thus all of United Guaranty's claims are arbitrable.

Bulk Policy because United Guaranty has relied on and referenced the Bulk Policy's terms in asserting claims against Countrywide Home:

> [E]quitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the . . . agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.

*American Bankers Ins. Group, Inc. v. Long*, 453 F.3d 623 (4th Cir. 2006) (quoting *Brantley v. Republic Mortgage Ins. Co.*, 424 F.3d 392, 395-96 (4th Cir. 2005)).

The Fourth Circuit has held that equitable estoppel is appropriate if, as here, the Complaint is essentially based upon a breach of the terms and conditions of the contract containing the arbitration provision:

> To be equitably estopped from denying the applicability of an arbitration clause . . . the signatory need not necessarily assert a cause of action against the nonsignatory for breach of the contract containing the arbitration clause. Instead, estoppel is appropriate "if in substance [the signatory's underlying] complaint [is] based on the [nonsignatory's] alleged breach of the obligations and duties assigned to it in the agreement."

*Id.* at 627-28; *see also Long v. Silver*, 248 F.3d 309, 320 (4th Cir. 2001) (citing with approval *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993), which held that because claims against the non-signatory were "intimately founded in and intertwined with" a contract containing an arbitration clause, signatory was estopped from refusing to arbitrate those claims.

United Guaranty's claims meets this test. Its claims against Countrywide Home are "intimately founded in and intertwined with" the Bulk Policy. In fact, this lawsuit is based upon Countrywide's alleged breach of the representations in a "set of contracts," which includes the Bulk Policy. (*See* Complaint ¶¶45-53 (alleging that Countrywide and United Guaranty executed a "set of contracts" to form each securitization and issue the insurance policy, which includes the Commitment Letters and the Policy).)

United Guaranty <u>admits</u> in its removal papers that "the mortgage insurance policies" "give rise to the claims asserted in [this action]." (Ellison Stay Decl., Ex. C) Its "implied covenant" claim relies on a covenant allegedly implicit in "the Commitment Letters and Insurance Policies." (Complaint ¶83) Its breach of contract cause of action alleges that Countrywide Home's "representations and warranties in the Commitment Letters . . . induced [it] to enter into each Insurance Policy. . . ." (*Id.* ¶79) It seeks relief from "payments on current and future claims under the Policies," and seeks rescission of the Policies in arbitration while seeking damages that produce potentially duplicative rescission-like relief in this Court. (*Id.* ¶73 & Prayer for Relief)

Finally, the claims here are "inextricably intertwined" in one other way as well. Although the Bulk Policy contains a very broad arbitration clause that requires arbitration of all disputes relating to it, United Guaranty's approach yields a result inconsistent with that expressed intent. An arbitration with the insured under the Bulk Policy would be split from a judicial action with Countrywide concerning the Commitment Letters that preceded that very same Bulk Policy—even though the two proceedings are both disputes "arising out of and relating to" the Bulk Policy. The better interpretation of the Policy is either that the parties would have intended this closely-related action to be arbitrated as well, or at a minimum, that the "inextricably intertwined" doctrine should be applied.

Accordingly, the Court should enter an order compelling arbitration of all of United Guaranty's causes of action under the Bulk Policy's arbitration provision.[6]

---

[6] Again, Countrywide believes the Court need not decide which of the pending arbitrations relating to the Bulk Policy should hear the issues raised in this case. The court that hears the State Court Action can determine that issue since it will have all the Bulk Policy contracts before it. Countrywide notes that many of the anti-forum shopping concerns discussed earlier would also favor requiring United Guaranty to proceed in the first-filed arbitration that Countrywide initiated under the Bulk Policy.

## IV. CONCLUSION

United Guaranty's desire to avoid the more comprehensive and efficient State Court Action is not a sound reason to proceed in this Court. The Court should stay the case to permit the State Court Action to proceed, or should enter an order compelling arbitration of this case, and thereafter stay this action.

This the 23rd day of April, 2009.

/s/ G. Michael Barnhill
Andrew Copenhaver, N.C. Bar #944
Michael Barnhill, N.C. Bar #9690
Debbie W. Harden, N.C. Bar #10576
**WOMBLE CARLYLE SANDRIDGE & RICE**
*A Professional Limited Liability Company*
One Wachovia Center, Suite 3500
301 South College Street
Charlotte, NC 28202
Telephone: (704) 331-4900
acopenhaver@wcsr.com
mbarnhill@wcsr.com
dharden@wcsr.com
OF COUNSEL:

David M. Halbreich
John N. Ellison
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
(215) 851-8100

Douglas E. Cameron
Traci S. Rea
**REED SMITH LLP**
435 Sixth Avenue
Pittsburg, PA 15219
(412) 288-3131

Jean M. Farrell
**REED SMITH LLP**
599 Lexington Avenue
22nd Floor
New York, NY 10022
(212) 521 5400

*Attorneys for Countrywide Financial Corp., and Countrywide Home Loans, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of April, 2009, I electronically filed Defendants' Memorandum In Support Of Motion To Stay Based On Judicial Efficiency Grounds In Light Of Earlier-Filed And More Comprehensive Action, Or in the Alternative, To Compel Arbitration with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

> James T. Williams, Jr.
> Robert A. Singer
> Brooks, Pierce, McLendon, Humphrey & Leonard, LLP
> Renaissance Plaza, Suite 2000
> 230 North Elm Street (27401)
> Post Office Box 26000
> Greensboro, NC 27420-6000
> jwilliams@brookspierce.com
> rsinger@brookspierce.com

/s/ G. Michael Barnhill
G. Michael Barnhill