IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:09-cv-00203

UNITED GUARANTY RESIDENTIAL
INSURANCE COMPANY OF NORTH
CAROLINA,

        Plaintiff,

  vs.

COUNTRYWIDE FINANCIAL CORP.
and COUNTRYWIDE HOME LOANS,
INC.,

        Defendants.

**Amended Memorandum of Law in Support of Motion To Dismiss Under Rules
12(b)(6) and 12(b)(7)**

# TABLE OF CONTENTS

**Page**

STATEMENT OF NATURE OF MATTER AND QUESTIONS PRESENTED ............. 1

STATEMENT OF FACTS.......................................................................................... 2

PROCEDURAL HISTORY ....................................................................................... 4

ARGUMENT .............................................................................................................. 6

   I.    THIS CASE SHOULD BE DISMISSED PURSUANT TO RULE 19................ 6

      A.   Servicing LP Is a "Required" Party Under Rule 19...................................... 6

      B.   Because Servicing LP Is "Indispensable," But Cannot Be Joined, the
         Court Should Dismiss This Action. ............................................................ 8

   II.   UNITED GUARANTY'S TORT AND CHAPTER 75 CLAIMS
       SHOULD BE DISMISSED BECAUSE ITS ALLEGATIONS FAIL TO
       STATE A CLAIM. ..................................................................................... 11

      A.   United Guaranty's Tort and Chapter 75 Claims Should Be Dismissed
         Because They Merely Restate Its Breach of Contract Claims. ................... 11

      B.   Because United Guaranty Had Access at All Times to the Data It
         Now Claims Shows Fraud, It Cannot Establish Reliance.......................... 13

      C.   The Fraud, Negligence and Negligence Misrepresentation Claims
         Are Untimely as to Three Securitization Transactions. ............................. 16

      D.   The Fraud and Negligent Misrepresentation Claims Lack Specificity....... 17

CONCLUSION ........................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

Acton Co., Inc. of Mass. v. Bachman Foods, Inc., 668 F.2d 76 (1st Cir. 1982)................... 9

Aerospace Mfg., Inc. v. Clive Merchant Group, LLC, No. 1:05CV00597
(M.D.N.C. May 23, 2006)........................................................................................... 12

Americash Loans, LLC v. AO Ventures LLC, No. 08 C 5147 (N.D.Ill. Mar. 19,
2009)........................................................................................................................... 5

Angell v. Kelly, No. 1:01CV00435, _____ (M.D.N.C. Nov. 30, 2006)....................... 14

Armbruster v. Wilson, 35 F.3d 555 (4th Cir. 1994) (unpublished) ................................. 5

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)................................................... 11

Brooks v. City of Winston-Salem, 85 F.3d 178 (4th Cir. 1996)..................................... 17

Broussard v. Meineke Discount Mufflers, 155 F.3d 331 (4th Cir. 1998)....................... 12

Carden v. Arkoma Assocs., 494 U.S. 185 (1990) ......................................................... 6

Carolina Mutual Life Ins. Co. v. McKinley Financial Services, No.
1:03CV00911 (M.D.N.C. Dec. 22, 2005) ................................................................ 13

Clark v. BASF Corp., 142 Fed. Appx. 659 (4th Cir. 2005) (unpublished)...................... 3

Davis Cos. v. Emerald Casino, Inc., 268 F.3d 477 (7th Cir. 2001) ............................... 5

Dealers Supply Co., Inc. v. Cheil Indus. Inc., 348 F. Supp. 2d 579 (M.D.N.C.
2004)........................................................................................................................ 18

Delta Financial Corp. v. Paul D. Comanduras & Assocs., 973 F.2d 301 (4th
Cir. 1992).................................................................................................................. 8

Edwards v. City of Goldsboro, 178 F.3d 231 (4th Cir. 1999) ...................................... 11

Faircloth v. Nat'l Home Loan Corp., 313 F. Supp. 2d 544 (M.D.N.C. 2003)................... 16

Foremost Guar. Corp. v. Meritor Sav. Bank, 910 F.2d 118 (4th Cir. 1990)................ 14, 16

Frank M. McDermott, Ltd. v. Moretz, 898 F.2d 418 (4th Cir. 1990).............................. 18

Giarratano v. Johnson, 521 F.3d 298 (4th Cir. 2008) ................................................. 11

Harrison v. Westinghouse Savannah River Co., 176 F.3d 776 (4th Cir. 1999)................. 18

Hillson Partners Ltd. P'ship v. Adage, Inc., 42 F.3d 204 (4th Cir. 1994) ...................... 15

Liner v. DiCresce, 905 F. Supp. 280 (M.D.N.C.1994) ................................................. 17

Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp., 351 F. Supp. 2d 436
(M.D.N.C. 2005) ...................................................................................................... 17

New York State Teachers Retirement Sys. v. Kalkus, 764 F.2d 1015 (4th Cir.
1985)......................................................................................................................... 6

North Carolina Mutual Life Ins. Co. v. McKinley Financial Services, No.
1:03CV00911 (M.D.N.C. Dec. 22, 2005) .............................................................. 13

Poth v. Russey, 99 Fed. Appx. 446 (4th Cir. 2004) ............................................. 15

Potomac Elec. Power Co. v. Babcock & Wilcox Co., 54 F.R.D. 486 (D. Md. 1972) ................................................................................................................ 7, 9

Royal Indem. Co. v. Apex Oil Co., 511 F.3d 788 (8th Cir. 2008) ..................................... 10

Schlumberger Indus., Inc. v. National Sur. Corp., 36 F.3d 1274 (4th Cir. 1994) ................. 7

Strum v. Exxon Co., 15 F.3d 327 (4th Cir. 1994) ........................................................ 2, 11

TSC Research LLC v. Bayer Chems. Corp., 552 F. Supp. 2d 534 (M.D.N.C. 2008) ............................................................................................................... 13

United States ex rel. Robinson v. Northrop Corp., 149 F.RD. 142 (N.D. Ill. 1993) ................................................................................................................. 18

Whitesell v. Town of Morrisville, 446 F. Supp. 2d 419 (E.D.N.C. 2006) .......................... 3

Wysong & Miles Co. v. Employers of Wasau, 4 F. Supp. 2d 421 (M.D.N.C. 1998) ................................................................................................................ 16

**State Cases**

Calloway v. Wyatt, 97 S.E.2d 881 (N.C. 1957) ........................................................ 14, 15

Oberlin Capital v. Slavin, 554 S.E.2d 840 (N.C. Ct. App. 2001) .................................. 14

Simms v. Prudential Life Ins. Co., 537 S.E.2d 237 (N.C. Ct. App. 2000) ...................... 14

**State Statutes**

N.C. Gen. Stat. §1-52(5), (9) (2009) ...................................................................... 16

Countrywide Financial Corp. ("Countrywide Financial") and Countrywide Home Loans, Inc. ("Countrywide Home") (collectively, "Countrywide") submit this memorandum in support of their motion to dismiss plaintiff United Guaranty Residential Insurance Company of North Carolina's ("United Guaranty") Complaint.

## STATEMENT OF NATURE OF MATTER AND QUESTIONS PRESENTED

In March 2009, United Guaranty, an American International Group affiliate and a large mortgage insurer, declared it would no longer pay claims under many policies insuring mortgage loans held or arranged by Countrywide. Countrywide thus filed a comprehensive action in California state court based on all the disputed policies, initiated arbitration under all policies that contain arbitration clauses, and joined as a plaintiff the entity that helped arrange for the insurance (Countrywide Home) and the entity charged with the duty to prosecute some of the policy claims (Countrywide Home Loans Servicing LP ("Servicing LP")). In response, United Guaranty has attempted to fragment the dispute into piecemeal actions. It filed an action against Countrywide in California federal court relating to a subset of the transactions at issue in the California state court action, filed this action relating to a different subset of those transactions, and initiated arbitration with the trusts that hold the loans insured under the same policies at issue in this case. In both federal actions, United Guaranty omitted to join Servicing LP.

In this action, United Guaranty seeks financial relief from policies, each having the same form (the "Bulk Policy"), relating to nine securitizations, involving $14 billion of insured loans. United Guaranty alleges that commitment letters executed prior to issuance of the Bulk Policy for each securitization are contracts that Countrywide has breached, and the same facts support tort and Chapter 75 unfair trade practice claims. Its claims should be dismissed in whole or in part for two sets of reasons:

1. All claims should be dismissed pursuant to Rule 12(b)(7) because the Complaint fails to name as a defendant Servicing LP, an indispensable party and a North Carolina citizen, whose joinder would destroy the diversity jurisdiction of this Court.

2. If the Court does not dismiss the entire action under Rule 12(b)(7), the tort and Chapter 75 claims should be dismissed pursuant to Rule 12(b)(6) because:

    a. The fraud, negligence-based and Chapter 75 claims should be dismissed because North Carolina law precludes Plaintiff from transforming this ordinary contract dispute into a tort action. *Strum v. Exxon Co.*, 15 F.3d 327 (4th Cir. 1994).

    b. The fraud and negligent misrepresentation claims should be dismissed because there was no justifiable reliance on any alleged misrepresentations since United Guaranty had access to the relevant materials but chose not to review them.

    c. The fraud, negligent misrepresentation and negligence claims are time-barred with respect to three of the securitizations.

    d. Finally, the fraud and negligent misrepresentation claims should be dismissed because the Complaint fails to allege the circumstances of the alleged fraud with the particularity required under Rule 9 – specifically, the time, place, speaker, contents, and manner in which the statements are false.

## STATEMENT OF FACTS

A mortgage insurer pays the lender when a borrower defaults and the lender is unable to recover its costs through its security interest. (Complaint ¶21) According to United Guaranty, it and Countrywide have done business together for four decades. (*Id.* ¶24) Since the 1980's, United Guaranty has used a "delegated" underwriting model, whereby it purportedly delegates underwriting responsibility to the lender and relies on the lender to "accurately represent information on the loans to be insured." (*Id.* ¶22)

In the early 2000's, there was an increase in the demand for mortgage-backed securities, particularly securitizations of second-lien home equity lines of credit. (*Id.*

¶¶29, 36) In 2005 and 2006, Countrywide helped create nine securitizations at issue in this case backed by more than $14 billion of second-lien loans. (*Id.* ¶38) Each securitization included a pool of second-lien loans that were conveyed to a trust. (*Id.* ¶39) The trustee issued certificates to private investors that represented their interests in the loans and entitled certificate holders to distribution of loan payments. (*Id.*) Servicing LP "acted as servicer for the Mortgage Loans in each Securitization." (*Id.* ¶40)[1]

In 2005, Countrywide asked United Guaranty to insure the loans underlying the securitizations. Utilizing its "delegated" model, United Guaranty agreed to insure those loans based on data Countrywide submitted on a "loan tape, which contained information about the loans that were to be included in the loan pool." (*Id.* ¶43) The loan files "contain the actual documents on which a loan is based." (*Id.* ¶59)

For each transaction, according to plaintiff, the contracts that formed each CWHEQ and provided insurance were: (a) the Trust Indenture, (b) the Commitment Letters; and (c) the Policy. (*Id.* ¶¶46–49) It alleges the Commitment Letter "served as an application for insurance" and is an agreement between it and Countrywide Home, under which United Guaranty agrees to issue a policy to cover loans that underlie the CWHEQ and Countrywide makes representations as to the quality of the loans and standards used to underwrite each loan." (*Id.* ¶¶48-49) The Commitment Letters typically stated[2]:

Bulk Policy Closing Information

---

[1] Although this allegation is accepted as true for purposes of the Rule 12(b)(6) portion of this brief, the additional materials Countrywide has submitted to support its Rule 12(b)(7) arguments show that although Servicing LP acted as Master Servicer on the CWEHQ 2006-S1 securitization (Chen Decl., Ex. 1), the Sale and Servicing Agreement accompanying the CWHEQ 2006-D securitization specifies Countrywide Home as the Master Servicer in that transaction (Chen Decl., Ex. 2).

[2] The Court may consider the Commitment Letters and the Bulk Policy as exhibits on the Rule 12(b)(6) arguments since plaintiff has referred to those items in its Complaint and they are central to its claims. *See Clark v. BASF Corp.*, 142 Fed. Appx. 659, 661 (4th Cir. 2005) (unpublished); *Whitesell v. Town of Morrisville*, 446 F. Supp. 2d 419, 421-22 (E.D.N.C. 2006) (citing *Clark*).

In order to verify the accuracy of certain information relating to each loan and to expedite the issuance of the Bulk Policy, the Insured shall provide or cause to be provided to United Guaranty any information that United Guaranty shall reasonably request concerning each loan which Insured requests that United Guaranty insure under a Bulk Policy. Such information shall be provided in such form as United Guaranty may reasonably require, including, without limitation, electronic media such as computer diskettes or an e-mail file. United Guaranty may request the right to perform due diligence on loans to be covered under the Bulk Policy.

Ex. A, §6.1. Compliance with United Guaranty's right to information under §6.1 is among its "Conditions Precedents to Issuance of the Bulk Policy." (*Id.* §5.1)

The Commitment Letter also states it and its exhibits constitutes the "entire agreement between the parties with respect to its subject matter" and "any prior statements, agreements, or representations with respect to the subject matter of this Commitment Letter are merged into this Commitment Letter." (Ex. A §19).

United Guaranty "normally investigates each claim" before paying it under a Policy, and its claims investigations here supposedly revealed fraud that prompted a further review of loan files. (Compl. ¶¶58-61) Yet, despite those inquiries, "as of March 2009" it had paid "hundreds of millions of dollars on the... Policies." (*Id.* ¶¶9, 57)

It seeks as relief its "payments on current and future claims under the Policies, including draw downs on guarantees," fees for "enforcing its rights under the Commitment Letters and Policies" and other relief. (Compl. ¶¶38-39)

## PROCEDURAL HISTORY

On March 18, 2009, after United Guaranty had repudiated its obligations under many policies, Countrywide Bank, FSB, Countrywide Home and Servicing LP filed an action in the Los Angeles Superior Court, *Countrywide Bank, FSB v. United Guar. Mortg. Indem. Co., et al.*, L.A. Co. Sup. Ct. No. BC409996 ("State Court Action").[3] In

---

[3] A copy of the Complaint in the State Court Action, which is relevant to Countrywide's Rule 12(b)(7) argument, is Ex.1 to the Ellison Decl. Under Rule 12(b)(7), the Court may consider extrinsic evidence

that Action, the Countrywide entities, including Servicing LP, seek declaratory relief regarding United Guaranty's duties under the Bulk Policy, Ex. B, that insures the nine securitizations at issue in this case, as well as other securitizations that United Guaranty has not included in this action. The Countrywide entities also initiated arbitration on all other Bulk Policy issues pursuant to a Policy clause that requires arbitration of all disputes relating to it, save for a declaratory relief claim. That Action also seeks relief regarding other policies issued by United Guaranty or its affiliated companies covering additional transactions and loans, not included here. Accordingly, the State Court Action is comprehensive and seeks a full resolution of the entire dispute.

On March 19, 2009, the day after learning about the State Court Action, United Guaranty filed suit in the Central District of California against Countrywide Financial, Countrywide Home and Bank of New York Trust Co., *United Guaranty Mortg. Indem. Co. v. Countrywide Fin'l Corp. et al.*, No. CV09-1888 RZ (C.D. Cal.) ("CA Federal Action") (Ellison Decl., Ex. 2). That Action alleges rescission and other claims arising under Commitment Letters and policies insuring other securitizations. Again, United Guaranty did not join Servicing LP, a named insured under those policies.

The next day, United Guaranty filed this action, which involves issues under Commitment Letters relating to policies that it did not include in the CA Federal Action, but which Countrywide included in the State Court Action. With respect to the identical policies and securitizations that are the subject of its complaint in this action, United Guaranty initiated a separate arbitration with the trusts that hold the insured loans.

---

relevant to whether an absent party is indispensable. *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 480 n.4 (7th Cir. 2001); ("In ruling on a dismissal for lack of joinder of an indispensable party, a court may go outside the pleadings and look to extrinsic evidence"); *Americash Loans, LLC v. AO Ventures LLC*, No. 08 C 5147 (N.D.Ill. Mar. 19, 2009). Defendants have attached all relevant material that is admissible only for purposes of the Rule 12(b)(7) argument to three accompanying declarations. The Court may also take judicial notice on this motion of pleadings in other courts. *See Armbruster v. Wilson*, 35 F.3d 555 (4th Cir. 1994) (unpublished).

Thus, the first-filed State Court Action and related arbitrations seek a comprehensive resolution of all the issues and policies that are included in this and the CA Federal Action, and each Countrywide filing includes Servicing LP. But United Guaranty seeks to split its arbitration relating to the Bulk Policy from this action concerning the Commitment Letters relating to the same Bulk Policy, seeks to further split those adjudications from the CA Federal Court Action, and seeks to deprive Servicing LP from participating in any of these proceedings.

## ARGUMENT

## I.    THIS CASE SHOULD BE DISMISSED PURSUANT TO RULE 19

Rule 12(b)(7) authorizes a motion to dismiss for failure to join a party under Rule 19. The Court makes a two-step inquiry. First, it determines whether an absent party should be joined as a "required party" under Rule 19(a). Second, if the court finds the absent party is required to be joined but <u>cannot</u> be joined for practical or jurisdictional reasons, it must determine whether, in "equity and good conscience" the action should be dismissed because the nonparty is "indispensable." Fed. R. Civ. P. 19(b).

Here, Servicing LP is a "required" and an "indispensable" party, but plaintiff cannot join it without destroying diversity jurisdiction.[4]  Federal courts have found dismissal in such cases appropriate.

### A.    Servicing LP Is a "Required" Party Under Rule 19

A party must be joined if, among other things, it "claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may as a practical matter impair or impede the person's ability to protect that

---

[4] A limited partnership takes the citizenship of all its members/partners. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990); *New York State Teachers Retirement Sys. v. Kalkus*, 764 F.2d 1015, 1019 (4th Cir. 1985). The partners of Servicing LP are limited liability companies that are North Carolina citizens because their sole owner/member is Bank of America, NA, a North Carolina citizen. Lindgren Decl., ¶3.

interest." Fed. R. Civ. P. 19(a). "In determining whether a party is necessary and, then, indispensable, the court must consider the practical potential for prejudice in the context of the particular factual setting presented by the case at bar." *Schlumberger Indus., Inc. v. National Sur. Corp.*, 36 F.3d 1274, 1286 (4th Cir. 1994); *accord Potomac Elec. Power Co. v. Babcock & Wilcox Co.*, 54. F.R.D. 486, 491 (D.Md. 1972).

The Policy states the Master Servicer "acts as the agent of the Insured for all purposes under this Policy including receiving any notices and performing any acts under this Policy." (Compl. ¶40; Ex. B, ¶1.41.) The "Pooling and Servicing Agreements" further describe Servicing LP's rights and duties in the securitization in which it acts as Master Servicer, and many of those rights and duties derive directly from United Guaranty's policies. (Chen Decl., Ex. 1) For example, the Master Servicer (*i.e.* Servicing LP) "shall administer the Mortgage Insurance Policy" and take action "when it is necessary to make claims and receive payments under each Mortgage Insurance Policy." (*Id.* at 76) It also agrees to present "claims to the insurer under any primary insurance policies and, in this regard, to take any reasonable action necessary to permit recovery under any primary insurance policies respecting defaulted Mortgage Loans." (*Id.* at 77) And, it "shall, except as otherwise specified in the Agreement, perform all of the obligations of the insured under each... Policy." (*Id.*)

Accordingly, Servicing LP has the duty to perform the specific acts required to prosecute claims as this action proceeds. How it prosecutes claims will be impacted by what happens in this action, which disputes United Guaranty's responsibility under the very policy that Servicing LP must apply in prosecuting the claims. Servicing LP should be allowed to help shape determinations regarding the policy since it is the party that has to act in accordance with the policy—both now and going forward.

And, although plaintiff does not demand rescission, it seeks the equivalent— praying for its "payments on current and future claims under the Policies, including draw

downs on guarantees." (Compl. ¶38) "The cases are virtually unanimous in holding that in suits between parties to a contract seeking rescission of that contract, all parties to the contract, *and others having a substantial interest in it*, are necessary parties." *Delta Financial Corp. v. Paul D. Comanduras & Assocs.*, 973 F.2d 301, 305 (4th Cir. 1992) (emph. added). Given Servicing LP's legal and practical interest, it is a "required party."

## B. Because Servicing LP Is "Indispensable," But Cannot Be Joined, the Court Should Dismiss This Action.

Because Servicing LP is a "required" party, it must be joined if "feasible." Fed. R. Civ. P. 19(a). But as noted, joinder is not "feasible" because plaintiff and Servicing LP share North Carolina citizenship, and the Court would lack subject matter jurisdiction if plaintiff joined Servicing LP. Thus, the Court must determine whether Servicing LP is "indispensable," *i.e.*, whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).

On this latter point, Rule 19(b) specifies four factors: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder. Fed. R. Civ. P. 19(b).

The Rule 19(a) discussion demonstrates why Servicing LP is indispensable under the first three factors. As the party bearing the duty to perform the acts to prosecute claims while this action proceeds, it would be unavoidably prejudiced and any judgment would be inadequate if it cannot participate in the adjudication of the very claims issues that impact how it should perform those acts.

The clincher, moreover, is the fourth factor, "whether the plaintiff would have an adequate remedy if the action is dismissed for nonjoinder."

- 8 -

Servicing LP already is a party to the first-filed State Court Action involving the same securitizations and policies at issue here, and plaintiff can raise any of its issues here either in that forum or the related arbitration. Moreover, the state court is an adequate forum as the issues in this case arise exclusively under state law. Accordingly, there is no reason to maintain this case without Servicing LP. *See Potomac*, 54. F.R.D. at 491 ("Of all the pragmatic considerations to be weighed by this Court, the one that stands out most strikingly... is the fact that the plaintiffs have available to them... another forum.").

In fact, the omission of Servicing LP to permit diversity jurisdiction is a basis courts have cited to dismiss under Rule 19. In *Acton Co., Inc. of Mass. v. Bachman Foods, Inc.*, 668 F.2d 76, 79-80 (1st Cir. 1982), for example, Acton and its subsidiary ACIM sought to purchase the assets of a seller's subsidiary. *Id.* at 77. The parents and subsidiaries on both sides of the deal executed the asset purchase agreement. *Id.* After the purchasers announced that they would not close the transaction because of the sellers' material misrepresentations, the sellers sued the purchasers in New York state court. *Id.* at 78. In response, ACIM, a Massachusetts corporation, brought a federal diversity action against both sellers in Massachusetts seeking damages and a declaration that no enforceable agreement existed between the parties. *Id.* ACIM did not join Acton as a co-plaintiff, however, because to do so would have destroyed diversity jurisdiction. *Id.*

The district court held Acton was indispensable and dismissed the action. The First Circuit affirmed, noting its reluctance to "permit ACIM ... to create diversity jurisdiction simply by omitting Acton from the original complaint and then waiting for Acton to be joined under Rule 19." *Id.* at 79-80. It added that an "incomplete federal action might prejudice [the sellers] by subjecting them to inconsistent obligations" and noted that the public interest in avoiding piecemeal litigation was "especially strong where, as here, it is evident that the ongoing state court action will adjudicate the entire

controversy." *Id.* at 81 (citation omitted). *Acton* declined to allow the Plaintiffs to "manipulate jurisdiction by dropping a plaintiff with a substantial interest in the [case]":

> Equity and good conscience would seem to require that under circumstances such as those present here, parties should present their claims in a state court rather than attempt to manipulate jurisdiction by dropping plaintiffs with a substantial interest in the claim solely for the purpose of retaining jurisdiction in the federal court.

*Acton,* 668 F.2d at 81 (quoting *Potomac,* 54 F.R.D. at 492-93). Here, Servicing LP has a "substantial interest in the case" but was dropped to gain federal jurisdiction, creating piecemeal litigation. Such piecemealing is unwarranted because the entire controversy may be litigated efficiently in the State Court Action.

Finally, although the Commitment Letters have a North Carolina forum selection clause (Ex. A., ¶9), it is premature to determine the applicability of that clause. Among the most fundamental tenets of federal-state comity is the presumption that state courts are competent to decide legal questions presented to them. Thus, in *Royal Indem. Co. v. Apex Oil Co.,* 511 F.3d 788 (8th Cir. 2008), the Eighth Circuit affirmed the district court's decision to dismiss the federal court action in favor of a parallel state court action in Illinois because, among other things, "the issues in both proceedings [were] the same... [a]ll the necessary parties [were] joined in the Illinois lawsuit... [and] [e]ven if the choice of law analysis led to choosing Missouri law, the Illinois state court [was] perfectly capable of applying Missouri state law in its case." *Id.* at 796-97.

Similarly, even though the policies or Commitment Letters specify a choice of North Carolina forum, other policies or Commitment Letters involving these parties specify a forum in California, which is Countrywide Home's principal place of business. Nothing indicates the California state court is incapable of making the appropriate forum selection and choice of law decision and applying North Carolina law if need be. The Court should dismiss the case under Rules 12(b)(7) and 19.

## II. UNITED GUARANTY'S TORT AND CHAPTER 75 CLAIMS SHOULD BE DISMISSED BECAUSE ITS ALLEGATIONS FAIL TO STATE A CLAIM.

Although the Court need not reach the remaining issues if it dismisses under Rule 12(b)(7), the tort and Chapter 75 claims also should be dismissed under Rule 12(b)(6). A Rule 12(b)(6) motion should be granted if the complaint does not allege "enough facts" to state a "plausible" claim for relief. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Although a court accepts all well-pleaded factual allegations, it is not "required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). If the factual allegations are not "enough to raise a right to relief above the speculative level," the Court may grant the motion. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

United Guaranty's allegations establish that: (a) its tort and Chapter 75 claims should be dismissed because they merely restate its breach of contract claim; (b) its fraud and negligent misrepresentation claims should be dismissed because (1) it cannot establish justifiable reliance since it had full access to the information that it alleges supports its fraud claims; and (2) the statute of limitations bars its fraud and negligence-based claims for three of the securitizations at issue; and (c) it failed to plead its fraud and negligent misrepresentation claims with the specificity required under Rule 9(b).

### A. United Guaranty's Tort and Chapter 75 Claims Should Be Dismissed Because They Merely Restate Its Breach of Contract Claims.

As plaintiff frames its action, this case involves a dispute over duties that it claims the Commitment Letters impose. Given that contractual center, its tort and Chapter 75 claims should be dismissed. North Carolina law "limit[s] the circumstances under which an ordinary contract dispute can be transformed into a tort action." *Broussard v. Meineke Discount Mufflers*, 155 F.3d 331, 345 (4th Cir. 1998). "Only where a breach of contract also constitutes an 'independent tort' may tort actions be pursued." *Strum*, 15 F.3d at

- 11 -

330. Therefore, only tort claims which are "identifiable and distinct" from the primary breach of contract claim can survive. *Broussard*, 155 F.3d at 346.

The rule applies equally to Chapter 75 claims. *See id.* at 347 ("The district court should not have allowed the UTPA claim to piggyback on plaintiffs' breach of contract action.... The courts differentiate between contract and deceptive trade practice claims, and relegate [contractual] claims... to the arena of contract law"). "It is well-established that a mere breach of contract or breach of warranty does not, standing alone, constitute an unfair or deceptive trade practice." *Aerospace Mfg., Inc. v. Clive Merchant Group, LLC*, No. 1:05CV00597 (M.D.N.C. May 23, 2006). "Rather, North Carolina law requires a showing of 'substantial aggravating circumstances' to support a claim under the North Carolina Unfair and Deceptive Trade Practices Act." *Id.*

Each of the tort and unfair trade practice claims merely rehashes its breach of contract claim. Each one rests on the same alleged "misrepresentations" about Countrywide's loan underwriting that form the basis of the breach of contract claim. (Compl. ¶¶78, 86, 96, 108, and 115). Moreover, United Guaranty claims the same damages for its breach of contract and tort claims, further illustrating the contractual center of the lawsuit and redundancy of the tort claims. (*See id.*, ¶¶80, 87, 104, 112, and 117) (All claims allege "damages, including, but not limited to, paying out claims caused by the excessively high default rates within the pools of Mortgage Loans.")

Although defendants dispute Plaintiff's construction of the Commitment Letters, even under United Guaranty's framing of the purported obligations, the duties are contractual in nature. It alleges Countrywide had duties under those Letters to provide information to United Guaranty and to follow underwriting guidelines, and denies that United Guaranty had to conduct its own due diligence with respect to the information readily available to it under the Letters. United Guaranty has alleged no duty owed it by

Countrywide independent of the contractual duties it claims the Letters create. And its damages consist of the identical economic loss as alleged in the tort and statutory claims.

In fact, this case mirrors the one the Honorable N. Carlton Tilley rejected in *North Carolina Mutual. Life Ins. Co. v. McKinley Financial Services*, No. 1:03CV00911 (M.D.N.C. Dec. 22, 2005). There, a broker agreed to write policies for an insurer "in accordance with the insurer's underwriting procedures and guidelines." *Id.* at *9. The insurer sued the broker for negligent misrepresentation, arguing it "prepared and submitted information without reasonable care that was relied upon to the detriment of the insurer." *Id.* at *8. This Court held those allegations "amount to mere breaches of the terms" of the contract, and the insurer had failed to identify conduct independent of the contract that could constitute an independent tort. *Id.* at *9.

So it is here. Plaintiff has attempted to manufacture a "tort dispute out of what is, at bottom, a simple breach of contract claim." *Strum*, 15 F.3d at 329. "Whatever injury [plaintiff] may have sustained here resulted from a possible breach of a commercial relationship memorialized in contract." *Id.* "This attempt to turn a contract dispute into a tort action with an accompanying punitive dimension is inconsistent with both North Carolina law and sound commercial practice." *Id.*; *see also TSC Research LLC v. Bayer Chems. Corp.*, 552 F. Supp. 2d 534, 543 (M.D.N.C. 2008) (dismissing tort and Chapter 75 claims). The tort and Chapter 75 claims should therefore be dismissed.

**B.    Because United Guaranty Had Access at All Times to the Data It Now Claims Shows Fraud, It Cannot Establish Reliance.**

As noted, the Commitment Letters state United Guaranty had a right to "any information that [it] shall reasonably request concerning each loan which Insured requests that United Guaranty insure under a Bulk Policy," and it "may request the right to perform due diligence on the loans to be covered under the Bulk Policy." (Ex. A, §6.1) Although defendants dispute plaintiff's construction of those Letters, United Guaranty

indisputably had full access to the loan files *before* it issued the Policies. It also has alleged that it discovered the purported tort/unfair practices simply by requesting and reviewing loan files. (Compl. ¶¶58-61) Those allegations preclude the reliance element of United Guaranty's fraud and negligent misrepresentations claims [*Id.* ¶¶102, 111] because they establish that it was not "justified" in relying on statements regarding the loans since it had access at all times to the very information it now claims shows a fraud.

"When the parties deal at arms length and the [p]arty has full opportunity to make inquiry but neglects to do so..., action in deceit will not lie..." *Angell v. Kelly*, No. 1:01CV00435 (M.D.N.C. Nov. 30, 2006), (quoting *Calloway v. Wyatt*, 97 S.E.2d 881, 885-86 (N.C. 1957). "A plaintiff must make reasonable inquiry even when the defendant makes specific 'representations as to... condition, quality[,] or character."). *Id.*; *see also, Simms v. Prudential Life Ins. Co.*, 537 S.E.2d 237, 240 (N.C. Ct. App. 2000) (Rule 12(b)(6) dismissal for failure to allege facts showing plaintiff was precluded from making a reasonable investigation of defendant's claims); *Oberlin Capital v. Slavin*, 554 S.E.2d 840, 847 (N.C. Ct. App. 2001) (Rule 12(b)(6) dismissal for failure "to allege that Oberlin was denied the opportunity to investigate or that Oberlin could not have learned the true facts by exercise of reasonable diligence").

Twenty years ago, the Fourth Circuit rejected United Guaranty's attempt to walk away from policies on the premise that it didn't understand the risks it was insuring. *See Foremost Guar. Corp. v. Meritor Sav. Bank*, 910 F.2d 118, 126 (4th Cir. 1990) (holding United Guaranty's purported reliance on insured's representations was not reasonable given its sophistication and its access to contradictory information). Twenty years later, little has changed. United Guaranty had complete access to the loan files and purportedly discovered the alleged fraud by simply requesting and reviewing those very files. (Compl. ¶¶58-62) Consequently, it cannot establish justifiable reliance.

Allegations that it was pressured into closing quickly and "obligated" to rely on Countrywide's statements [*Id.* ¶¶52-53] do not establish *reasonable* reliance. It could have declined the business, and the Commitment Letters state it had the right to conduct due diligence before closing. It would undermine the law's policy that each side must attend to its own interest if an insurer could ignore its due diligence duty, gain hundreds of millions in premiums, and later claim "fraud" or "negligent misrepresentation" merely because the other party wanted to close quickly. *See Calloway*, 97 S.E.2d at 886 ("[t]he right to rely on representations is inseparably connected with the correlative problem of the duty of a representee to use diligence in respect of representations made to him. The policy of the courts is, on the one hand, to suppress fraud and, on the other, not to encourage negligence and inattention to one's own interest").

Nor may United Guaranty claim reliance based on its allegations that Countrywide publicly stated that it uses procedures "designed to produce high quality loans..." (Compl. ¶26), takes "seriously the role of a responsible lender for all of our constituencies" and "engage[s] in prudent underwriting" (*Id.* ¶27), will not compromise its standards as it grows market share (*Id.* ¶31) or "sacrifice sound lending and margins for the sake of getting to that 30 percent market share." (*Id.* ¶32)

Fraud cannot ordinarily be premised on unfulfilled promises or statements of future events. *See Poth v. Russey*, 99 Fed. Appx. 446, 452 (4th Cir. 2004) (unpublished); *Hillson Partners Ltd. P'ship v. Adage, Inc.*, 42 F.3d 204, 212 (4th Cir. 1994). Likewise, statements about the "quality" of the loans Countrywide underwrites, its use of "prudent" underwriting guidelines, and "sound lending" philosophies merely opine as to the general character of Countrywide's business, its future plans, and its general lending philosophy. In a complex insurance transaction, such general puffery cannot form the basis for any justifiable reliance—particularly given United Guaranty's sophistication, participation in a 40-year relationship with Countrywide and access to the loan files themselves. *See, e.g.,*

*Foremost Guaranty*, 910 F.2d at 126 (concluding United Guaranty's reliance was unreasonable in a complex transaction given its sophistication and access to information).

Since plaintiff's allegations do not permit reliance to be inferred, the Court should dismiss the fraud and negligent misrepresentation claims.

### C. The Fraud, Negligence and Negligence Misrepresentation Claims Are Untimely as to Three Securitization Transactions.

United Guaranty's access to the loan files before the transactions closed also bars part of its fraud, negligent misrepresentation and negligence claims on statute of limitations grounds. United Guaranty alleges it relied upon purportedly fraudulent public statements made by Countrywide in 2004 and 2005 (*Id.* ¶¶26, 30, 32), and three of the transactions at issue predate March 20, 2006. (*Id.* ¶ 51) It admits Countrywide provided the loan tapes that allegedly contain misrepresentations to United Guaranty *before* the transactions closed and *before* the Commitment Letters were signed. (*Id.* ¶¶43, 92)

North Carolina's statute of limitations is three years for fraud, negligence, and negligent misrepresentation claims. N.C. Gen. Stat. §1-52(5), (9) (2009). For those transactions that closed more than 3 years before the March 20, 2009, complaint filing, plaintiff's fraud, negligent misrepresentation and negligence claims are time-barred.

Nor may plaintiff save those claims under a delayed "discovery" theory. Discovery is defined as when the fraud "is discovered or should have been discovered in the exercise of reasonable diligence." *Wysong & Miles Co. v. Employers of Wasau*, 4 F. Supp. 2d 421, 433 (M.D.N.C. 1998). A court may determine the discovery date "as a matter of law where the plaintiff clearly had both capacity and opportunity to discover the fraud." *See id.* (granting motion to dismiss); *accord Faircloth v. Nat'l Home Loan Corp.*, 313 F. Supp. 2d 544, 553-54 (M.D.N.C. 2003) (granting motion to dismiss).

As a matter of law, the statute began to run when the transactions closed because plaintiff "clearly had both capacity and opportunity" to discover what it now calls

"fraud." It alleges it discovered the fraud based on a loan file review, and it had a right to perform that review before the transactions closed. Neither its "time pressure," nor its "delegated model" allegations are any excuse. The discovery rule turns not on what it did but on what it "should have" done. Under *Foremost Guaranty*, it should have reviewed the information available to it. In addition, to the extent its fraud, negligent misrepresentation and negligence claims are based on public statements made in 2004 and 2005 (*see* Compl. ¶¶26, 30, 32), those claims are similarly time barred because its subsequent access to the loan files triggered "discovery" and the limitations period.

Since the Complaint's face reveals facts establishing a statute of limitations bar, dismissal is appropriate. *See Brooks v. City of Winston-Salem,* 85 F.3d 178, 181 (4th Cir. 1996).

### D.     The Fraud and Negligent Misrepresentation Claims Lack Specificity

United Guaranty's fraud and negligent misrepresentation claims do not satisfy the Rule 9(b) mandate that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).[5] That rule applies to both fraud and negligent misrepresentation. *See Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.,* 351 F. Supp. 2d 436, 447 (M.D.N.C. 2005) (Rule 9(b) applies "where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud.... [T]he underlying rationales for requiring heightened pleading for fraud equally apply to negligent misrepresentation").

[T]he "circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person

---

[5] Under North Carolina law, plaintiff must allege with particularity these essential fraud elements: (1) a false representation or concealment of a material fact, (2) that was reasonably calculated to deceive, (3) which was made with the intent to deceive, (4) that did in fact deceive, and (5) resulted in damage. *Liner v. DiCresce,* 905 F. Supp. 280, 288 (M.D. N.C. 1994).

making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999). Detrimental reliance also must be pled with particularity. *See, e.g., Frank M. McDermott, Ltd. v. Moretz,* 898 F.2d 418, 421 (4th Cir. 1990) ("[I]t is well settled under North Carolina law... that a complaint claiming fraud is fatally defective unless it alleges detrimental reliance").

Where the defendant is a corporation, moreover, the plaintiff must identify the individuals involved in the fraud and may not rest on general assertions that "the company" committed the conduct. *United States ex rel. Robinson v. Northrop Corp.,* 149 F.RD. 142, 145 (N.D. Ill. 1993). And, "where there are multiple defendants, plaintiffs must allege all claims with particularity as to each defendant." *Dealers Supply Co., Inc. v. Cheil Indus. Inc.,* 348 F. Supp.2d 579, 589 (M.D.N.C. 2004) (emph. added). "Courts have been quick to reject pleadings in which multiple defendants are 'lumped together' and in which 'no defendant can determine from the complaint which of the alleged representations it is specifically charged with having made, nor the identity of the individual by whom and to whom the statements were given.'". *Id.*

The Complaint falls short. It alleges broadly that Countrywide defrauded it in three ways: (1) providing misleading information on the loan tapes and failing to comply with underwriting standards (Compl. ¶¶6-8, 12, 60-63, 92); (2) misrepresenting information about the loans in each Commitment Letter (*Id.* ¶¶78, 94); and (3) making fraudulent public statements about its underwriting practices (*Id.* ¶¶26, 27, 30-32, 34, 35, 97). The Complaint identifies nine securitizations, each composed of a pool of loans, that closed within 12 months. (*Id.* ¶¶38, 39, 51). Data related to each loan and borrower in this "pool," or securitization, was contained on a loan tape. (*Id.* ¶92).

Noticeably absent from the Complaint are any detailed facts, describing what guidelines were not followed, which of thousands of loans were affected, which policy or transaction was impacted, or any other facts. The closest United Guaranty comes in its

Complaint to making any kind of particularized allegation of fraud is its offer of three "specific examples of material errors and underwriting violations found in United Guaranty's review of the loan files." *(Id.* ¶ 62) The three "specific examples," however, are generic descriptions of a mere three transactions (out of billions of dollars of loans) where a piece of data allegedly was inaccurate in some unspecified way on some unidentified loan tape when compared with a loan file. Such allegations fail to identify the who, what, where and when of the alleged fraud in the detail Rule 9(b) requires.

Similarly, United Guaranty's allegation that "Countrywide" made false statements or that "Countrywide" caused "its employees" to do so *(Id.* ¶92) fails to meet both its duty to plead the individuals involved and its duty to plead the defendant responsible.[6]

These omissions are no accident. The Complaint alleges United Guaranty *has* reviewed the loan files and thus it has access to the very details it has omitted to plead. Its omissions suggest it knows that if it pleaded the required details, it would further show that it is alleging nothing more than particular loan files contained problems that it believes permits it to deny coverage. That is a contract dispute that warrants resolution on a claim-by-claim basis—exactly how plaintiff treated this matter until March 2009.

United Guaranty also has failed to plead facts essential to determining whether it ratified the fraud. It asserts that it learned of the fraud through a review of loan files that it "requested and obtained" from Countrywide. *(Id.* ¶59) Yet, "[a]s of March 2009, while reserving its rights, United Guaranty has paid hundreds of millions of dollars on the

---

[6] United Guaranty appears to justify its failure to differentiate defendants, stating "on information and belief, Countrywide employees... held positions at both Countrywide Home Loans and Countrywide Financial and made representations to United Guaranty on behalf of both companies." (Complaint ¶16) This does not specify "who" said "what."

Insurance Policies." (*Id.* ¶ 57) Absent are required allegations of when it conducted the alleged file review, when it reserved its rights and how it did so.[7]

In *Foremost Guaranty, supra,* United Guaranty tried to rescind insurance covering pools of mortgage loans based on alleged fraud. After learning about the alleged fraud, it continued to accept premiums and insure the mortgages, only seeking to rescind later. The Fourth Circuit held United Guaranty had "waived its claim for rescission by not rescinding when it gained access to the inconsistent statements. An insurer should not be permitted to rescind when it continues to collect premiums, as here, after coming into knowledge of facts upon which to base rescission." *Id.* at 129. Since United Guaranty may not claim fraud if it continued to treat the contracts as valid even after it had knowledge of the facts giving rise to the alleged fraud, Rule 9(b) obligates it to plead facts showing that is not the case here. Since it did not do so, and since it failed to satisfy Rule 9(b) in all other respects, the Court should dismiss its fraud allegations.

## CONCLUSION

United Guaranty's attempt to splinter this dispute into piecemeal cases that each omit Servicing LP is improper given Servicing LP's responsibility to prosecute the very insurance claims that United Guaranty disputes. For the above reasons, the Court should dismiss the action for failure to join an indispensable party. In the alternative, it should dismiss the tort and Chapter 75 claims under Rule 12(b)(6) for the other reasons above.

---

[7] This omission likewise is not accidental. *See* Ellison Decl. Ex.2. United Guaranty pleaded in its CA Federal Action complaint that its rescission rate based on fraud was 50% in 2007. *Id.* ¶62. In doing so, it demonstrated that it had ratified the alleged fraud by continuing to collect premiums and evaluate claims on a loan by loan basis after reviewing claims revealed the "fraud." *See id.* It only repudiated the policies later, in March 2009. When it filed this action later, however, plaintiff apparently removed all dates from the Complaint here to avoid a motion to dismiss. In doing so, however, it showed its Complaint should be dismissed under Rule 9(b).

- 20 -

Case 1:09-cv-00203-UA-PTS   Document 17   Filed 04/24/09   Page 24 of 26

This the 24th day of April, 2009.

/s/ G. Michael Barnhill
W. Andrew Copenhaver, N.C. Bar #944
G. Michael Barnhill, N.C. Bar #9690
Debbie W. Harden, N.C. Bar #10576
**WOMBLE CARLYLE SANDRIDGE & RICE**
*A Professional Limited Liability Company*
One Wachovia Center, Suite 3500
301 South College Street
Charlotte, NC 28202
Telephone: (704) 331-4900
acopenhaver@wcsr.com
mbarnhill@wcsr.com
dharden@wcsr.com

OF COUNSEL:

David M. Halbreich
John N. Ellison
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
(215) 851-8100

Douglas E. Cameron
Traci S. Rea
**REED SMITH LLP**
435 Sixth Avenue
Pittsburg, PA 15219
(412) 288-3131

*Attorneys for Countrywide Financial Corp., and*
*Countrywide Home Loans, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of April, 2009, I electronically filed **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

    James T. Williams, Jr.
    Robert A. Singer
    Brooks, Pierce, McLendon, Humphrey & Leonard, LLP
    Renaissance Plaza, Suite 2000
    230 North Elm Street (27401)
    Post Office Box 26000
    Greensboro, NC  27420-6000
    jwilliams@brookspierce.com
    rsinger@brookspierce.com

                  /s/ G. Michael Barnhill
                  G. Michael Barnhill