UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| United Guaranty Residential Insurance Company of North Carolina,<br><br>    Plaintiff,<br><br>  -against-<br><br>Countrywide Financial Corp., and Countrywide Home Loans, Inc.<br><br>    Defendants. | Civil Action No. 1:09CV00203 |

**RNC'S OPPOSITION TO COUNTRYWIDE'S
MOTION TO STAY OR TO COMPEL ARBITRATION**

02841.61563/2920745.3

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................. 1

STATEMENT OF FACTS ............................................................................... 2

RELATED ACTIONS ...................................................................................... 4

ARGUMENT ..................................................................................................... 6

I.    THE COURT SHOULD DECLINE TO STAY THIS ACTION. .......................... 6

    A.    A Stay Under *Colorado River* Is An Extraordinary Remedy That Should Only Be Granted In Limited Circumstances. ................................. 6

        1.    A Court May Not Grant A Stay Under *Colorado River* Absent Exceptional Circumstances. ................................................. 6

        2.    The State And Federal Actions Are Not Parallel Because The California Action Will Not Dispose Of RNC's Claims. ................... 7

        3.    The *Colorado River* Factors Favor Proceeding With This Action. ..................................................................................... 8

    B.    The First-To-File Rule Does Not Apply. ................................................. 11

        1.    The Actions Are Not Duplicative. ................................................. 12

        2.    Application Of The First-To-File Rule Weighs Against A Stay. ............................................................................................... 13

II.    THE COURT SHOULD DENY COUNTRYWIDE'S REQUEST FOR AN ORDER COMPELLING ARBITRATION OF ALL CLAIMS ......................... 14

    A.    Countrywide Cannot Enforce The Arbitration Clause In The Policies Because RNC Is Not Asserting Claims Under The Policies. ..................... 14

    B.    Countrywide's Agency Theory Does Not Entitle It to Enforce the Trustees' Arbitration Clause in the Policies. ........................................... 16

    C.    The Doctrine Of Equitable Estoppel Has No Application Here Because RNC Is Not Seeking Any Benefit Under The Policies. ............... 17

CONCLUSION ................................................................................................. 20

**Cases**

*AXA Corp. Solutions v. Underwriters Reinsurance Corp.*,
347 F.3d 272 (7th Cir. 2003) ................................................................ 10

*Affinity Memory & Micro, Inv. v. K & Q Enters., Inc.*,
20 F. Supp. 2d 948 (E.D. Va. 1998) ...................................................... 14

*Arrants v. Buck*,
130 F.3d 636 (4th Cir. 1997) ..................................................... 14, 15, 17

*Automated Sys. and Programming, Inc. v. Cross*,
176 F. Supp. 2d 458 (D. Md. 2001) ......................................................... 7

*Burford v. Sun Oil Co.*,
319 U.S. 315 (1943) ................................................................................ 7

*CACI Int'l, Inc. v. Pentagen Techs Int'l, Ltd.*,
70 F.3d 111, 1995 WL 679952 (4th Cir. 1995) ...................................... 11

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*,
511 F.3d 535 (6th Cir. 2007) ................................................................ 13

*Collie v. Wehr Dissolution Corp.*,
345 F. Supp. 2d 555 (M.D.N.C. 2004) .................................................. 17

*Colorado River Water Conservation District v. United States*,
424 U.S. 800 (1976) ........................................................ 1, 6, 7, 8, 9, 11

*Covance Labs., Inc. v. Orantes*,
338 F. Supp. 2d 613 (D. Md. 2004) ......................................................... 7

*DP Solutions, Inc. v. Help Desk Now, Inc.*,
No. 1:08 CV 104, 2008 WL 4543785 (M.D.N.C. Oct. 9, 2008) .............. 18

*First Nationwide Mortgage Corp. v. FISI Madison, LLC*,
219 F. Supp. 2d 669 (D. Md. 2002) ...................................................... 12

*Gannett Co., Inc. v. Clark Constr. Group, Inc.*,
286 F.3d 737 (4th Cir. 2002) ........................................................ 8, 9, 10

*Great Am. Ins. Co. v. Gross*,
468 F.3d 199 (4th Cir. 2006) ......................................................... 8, 10

*Internet Law Library v. Southridge Capital Mgmt., LLC*,
208 F.R.D. 59 (S.D.N.Y. 2002) ............................................................. 13

*Jefferson Pilot Life Ins. Co. v. Griffin*,
No. 1:07CV0096, 2008 WL 2485598 (M.D.N.C. June 16, 2008) ............ 13

*Landis v. North American Co.*,
   299 U.S. 248 (1936) ........................................................................................................ 11

*Long v. Silver*,
   248 F.3d 309 (4th Cir. 2001) ...................................................................................... 19

*Lumen Constr., Inc. v. Brant Constr. Co., Inc.*,
   780 F.2d 691 (7th Cir. 1986) ........................................................................................ 7

*McCarthy v. Azure*,
   22 F.3d 351 (1st Cir. 1994) ......................................................................................... 17

*McLaughlin v. United Virginia Bank*,
   955 F.2d 930 (4th Cir. 1992) ................................................................................... 7, 8, 9

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ........................................................................... 1, 7, 9, 10, 14

*Nall v. Piper*,
   948 F.2d 1282, 1991 WL 192141 (4th Cir. 1991) .............................................. 11, 14

*Nat'l Textiles, LLC v. Daugherty*,
   250 F. Supp. 2d 575 (M.D.N.C. 2003) ......................................................................... 7

*New Beckley Mining Corp. v. Int'l Union, UMWA*,
   946 F.2d 1073 (4th Cir. 1991) .................................................................................. 8, 9

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   7 F.3d 1110 (3d Cir. 1993) ......................................................................................... 17

*Quackenbush v. Allstate Insurance Co.*,
   517 U.S. 706 (1996) ...................................................................................................... 7

*Quesenberry v. Volvo Group N. Am., Inc.*,
   No. 1:09cv00022, 2009 WL 648658 (W.D. Va. Mar. 10, 2009) .......................... 11, 14

*R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*,
   384 F.3d 157 (4th Cir. 2004) .................................................................................. 18, 19

*Roby v. Corporation of Lloyd's*,
   996 F.2d 1353 (2d Cir. 1993) ..................................................................................... 17

*Smith v. S.E.C.*,
   129 F.3d 356 (6th Cir. 1997) ...................................................................................... 12

*Sokkia Credit Corp. v. Bush*,
   No. CIV A.99-2480-GTV, 2000 WL 1472746 (D. Kan. Aug. 18, 2000) ................... 14

*Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*,
   10 F.3d 753 (11th Cir. 1993) ...................................................................................... 19

*United Energy Dists., Inc. v. Rankin-Patterson Oil Co., Inc.*,
   No. 7:07-3234-HMH, 2007 WL 4568997 (D.S.C. Dec. 20, 2007) ........................... 12

*United States v. Cargill, Inc.*,
  508 F. Supp. 734 (D. Del. 1981) ................................................................................. 11

*Valpak of Cincinnati, Inc. v. Valpak Direct Marketing Sys., Inc.*,
  No. 1:05CV00510SSB-TSH, 2005 WL 3244321 (S.D. Ohio Nov. 30, 2005) .......... 13

*Volvo Constr. Equip. N. Am, Inc. v. CLM Equip. Co., Inc.*,
  386 F.3d 581 (4th Cir. 2004) ................................................................................. 11

*Vulcan Chemical Technologies, Inc. v. Barker*,
  297 F.3d 332 (4th Cir. 2002) ................................................................................... 9

*Wachovia Bank, Nat'l Ass'n v. Schmidt*,
  445 F.3d 762 (4th Cir. 2006) ....................................................................... 15, 18, 19

## Statutes

Federal Arbitration Act, 9 U.S.C. § 4 .......................................................................... 20

# INTRODUCTION

Countrywide Financial Corp., and Countrywide Home Loans, Inc. (collectively, "Countrywide")—despite their prior contractual consent to the *exclusive* jurisdiction of the federal or state courts of North Carolina in the commitment letters that form the basis of this action—argue that this action should be either stayed in favor of California proceedings or instead referred to arbitration. To the contrary, Countrywide should be forced to live up to its contracts and try this case in North Carolina federal court.

Countrywide's argument that this case should be stayed because it filed a complaint in California state court two days before United Guaranty Residential Insurance Company of North Carolina ("RNC") filed its federal complaint in North Carolina ignores fact, law, and process: (1) under the choice of forum clauses in the commitment letters, the claims in this case could *not* have been filed in California; (2) *Colorado River* abstention is an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy," *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813 (1976), which Countrywide cannot possibly justify; and in any event (3) Countrywide's California state action has now been removed to federal court. Moreover, Countrywide's contention that it need not show "extraordinary" circumstances for abstention is spurious: "A stay is as much a refusal to exercise federal jurisdiction as a dismissal." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983).

Countrywide's alternative argument that this case should be stayed because it filed "first" in California is equally baseless. Both parties filed within days after settlement

discussions broke down. Moreover, the first-to-file precept only applies where two actions are duplicative, but the North Carolina and California actions are not the same. The two actions are based on different agreements and seek different remedies. This case is based on commitment letters under which RNC agreed to issue insurance policies covering certain mortgage loans ("Commitment Letters", Compl. ¶ 48), and seeks compensatory and punitive damages for Countrywide's fraud and breach of the Commitment Letters. By contrast, the California Action is purportedly based in part on nine insurance policies ("Policies") that issued after the Commitment Letters. Countrywide is not even a party to these Policies, and in any case seeks declaratory relief and damages under the Policies—not the Commitment Letters.

As a last ditch effort, Countrywide moves to compel arbitration—even though it admits there is *no arbitration agreement* between it and RNC. Countrywide argues that arbitration may be compelled because of an arbitration clause in the Policies—not the Commitment Letters. But the Policies are not at issue, and Countrywide is not even a party to the Policies. In apparent recognition that its position is unsound, Countrywide argues that RNC should be equitably estopped from arguing the inapplicability of the Policies' arbitration clauses. But RNC seeks no benefit under the Policies here, and the doctrine of equitable estoppel is thus completely inapplicable.

Countrywide's motion should be denied in its entirety.

## **STATEMENT OF FACTS**

Between September 2005 and September 2006, Countrywide created nine residential mortgage backed securities, encompassing over $14 billion of mortgage loans.

(Compl. ¶¶ 38, 51). To increase the credit rating—which would facilitate sale to investors—Countrywide sought insurance from RNC to cover the risk of default for the loans. *Id.* ¶¶ 3-4. Countrywide induced RNC to issue the Policies by fraudulently representing, *inter alia*, that: (i) the loans had certain minimum loan to value ratios and were made to borrowers with certain minimum credit scores; (ii) the loans were underwritten in conformity with Countrywide's underwriting guidelines and adhered to prudent origination standards; and (iii) any exceptions to underwriting guidelines would be justified by strong compensating factors. *Id.* ¶¶ 54-55, 92-105. In reliance on Countrywide's misrepresentations, RNC issued the Policies to trustees who held and administered the loans for the benefit of investors ("Trustees"). *Id.* ¶ 43.

After the last securitization closed on September 29, 2006, and RNC had issued the last Policy, the loans began to show a high rate of default. *Id.* ¶¶ 51, 56. As part of its normal business process, RNC investigated each claim and discovered a high rate of borrower fraud in the loan files. *Id.* ¶ 58. As a result, RNC initiated a systematic review of the loans underlying the securitizations. *Id.* ¶ 59. This review revealed that a significant proportion of the underlying loans were either materially deficient or failed to comply with Countrywide's own underwriting standards and guidelines. *Id.* ¶¶ 60-63. It demonstrated not just fraud by the borrowers, but by Countrywide as well. *Id.* ¶ 64. RNC never would have issued the Policies if Countrywide had disclosed the true facts about its loan origination practices and the loan and borrower characteristics for the securitizations. *Id.* ¶ 96.

## RELATED ACTIONS

In early 2009, RNC informed Countrywide it had discovered systemic fraud in loans generated by Countrywide, and that these defects warranted rescission of the Policies. (Declaration of John E. Gaines In Opposition To Countrywide's Motion To Stay Or To Compel Arbitration ("Gaines Decl."), ¶ 11). The parties engaged in a series of negotiations in early 2009. *Id.* ¶¶ 11-12. After failing to resolve these issues, both companies filed suit within a matter of days. *Id.* ¶ 14.

Countrywide filed a complaint in Los Angeles Superior Court on March 18, 2009. *Countrywide Bank, FSB v. United Guar. Mortg. Idem. Co., et al.*, L.A. Co. Sup. Ct. No. BC409996 ("California Action"; Ellison Decl. in Support of Mot. To Dismiss, filed April 14, 2009, Ex. 1). By lumping together claims involving 38 different policies, Countrywide chose unilaterally to disregard the forum selection clauses and arbitration provisions governing many of these policies. Each policy was issued pursuant to commitment letters between Countrywide, a Bank of New York entity and United Guaranty Mortgage Indemnity Company ("UG Indemnity"). The commitment letters for many of the policies contain clauses stating, "[a]ny legal action instituted under this Commitment Letter must be brought in a federal or state court located in Greensboro, North Carolina." (Gaines Decl. ¶ 3 and Ex. B). Many of the policies also contain arbitration clauses as to "all controversies, disputes or other assertions or liability or rights arising out of or relating to th[e] Polic[ies] including the breach, interpretation, or construction thereof," except that a party may seek a declaratory judgment from a court "on matters of interpretation of th[e] Polic[ies]." (California Action, CW Compl. ¶ 41)

On March 19, 2009, UG Indemnity filed a complaint in the Central District of California against Countrywide Financial Corp., Countrywide Home Loans, Inc., and The Bank of New York Trust Co., N.A. asserting breach of contract, tort, and statutory claims in connection with eleven insurance policies and their associated commitment letters. *United Guar. Mortgage Indem. Co. v. Countrywide Fin. Corp., et al.,* No. CV 09-01888 MRP (JWJx) (C.D. Cal. March 19, 2009). Each of those commitment letters contains a forum selection clause *requiring* that claims be brought in California. (Gaines Decl. ¶ 2).

On March 20, 2009, RNC filed this action against Countrywide, asserting breach of contract, tort, and statutory claims in connection with the nine Commitment Letters. Each of the Commitment Letters contains a forum selection clause *requiring* that claims be brought in North Carolina. (Gaines Decl. ¶ 3). Contrary to Countrywide's argument that RNC was attempting to "split" and "separate" related claims (at 7), RNC filed in North Carolina as required by these forum selection clauses.

On March 20, 2009, RNC also filed an arbitration demand with the American Arbitration Association in North Carolina against the Trustees insured under the Policies—Bank of New York Mellon Trust of Delaware and Wells Fargo Bank, NA— seeking rescission of the Policies. Each of the Policies contains an arbitration clause (at 16-17) *requiring* arbitration of "all controversies, disputes or other assertions of liability or rights arising out of or relating to this Policy." Countrywide is not a party to the Policies.

On April 6, 2009, Countrywide Bank, FSB filed an arbitration demand against RNC asserting breach of contract claims in connection with six insurance policies. These six policies are not at issue here; they are at issue in the California Action.

On April 20, 2009, RNC, UG Indemnity, and United Guaranty Residential Insurance Company timely removed the California Action to the United States District Court for the Central District of California. Countrywide filed a motion to remand on April 30, 2009.

## ARGUMENT

## I. THE COURT SHOULD DECLINE TO STAY THIS ACTION.

### A. A Stay Under *Colorado River* Is An Extraordinary Remedy That Should Only Be Granted In Limited Circumstances.

Countrywide spends the bulk of its argument addressing abstention under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), but ignores that the California Action has been removed to federal court. Even if the case were still in state court, however, Countrywide's motion would be baseless.

#### 1. A Court May Not Grant A Stay Under *Colorado River* Absent Exceptional Circumstances.

The guiding principle of *Colorado River* is that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813. It should be exercised only sparingly. "Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Id.* at 813.

Countrywide implies (at 16) that it need not establish exceptional circumstances because it is seeking a stay and so the requirement to prove exceptional circumstances is of "diminished relevance." That is directly contrary to Supreme Court authority: "a stay is as much a refusal to exercise federal jurisdiction as a dismissal." *Moses H. Cone*, 460 U.S. at 28; *see also Nat'l Textiles, LLC v. Daugherty*, 250 F. Supp. 2d 575, 578 (M.D.N.C. 2003). None of the cases on which Countrywide relies actually supports its argument that the Court need not find "exceptional circumstances" when a party seeks a stay instead of dismissal.[1]

### 2. The State And Federal Actions Are Not Parallel Because The California Action Will Not Dispose Of RNC's Claims.

If suits are not parallel, no *Colorado River* issue is presented. *See McLaughlin v. United Virginia Bank*, 955 F.2d 930, 935 (4th Cir. 1992). Countrywide's argument that the two actions are parallel rests on the bald assertion (at 11) that "[e]very policy at issue in this action was at issue in the State Court Action … and all its claims here may be raised in that action or the related arbitration." This argument ignores the key fact that RNC's claims cannot be brought in the California Action: the forum selection clauses in the Commitment Letters *require that all claims be brought in North Carolina*.

Countrywide also ignores the differences between the two actions. Suits are only "parallel if substantially the same parties litigate substantially the same issues in different

---

[1] *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706 (1996), is irrelevant because the Court was not considering the requirements under *Colorado River*, but was deciding the propriety of staying or dismissing claims for money damages under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), an entirely distinct abstention doctrine not at issue in the present case. Countrywide's remaining authority holds that a stay under *Colorado River* requires exceptional circumstances. *Lumen Constr., Inc. v. Brant Constr. Co., Inc.*, 780 F.2d 691, 694 (7th Cir. 1986); *Covance Labs., Inc. v. Orantes*, 338 F. Supp. 2d 613, 615 (D. Md. 2004); *Automated Sys. and Programming, Inc. v. Cross*, 176 F. Supp. 2d 458, 462 (D. Md. 2001).

forums." *New Beckley Mining Corp. v. Int'l Union, UMWA*, 946 F.2d 1073, 1074 (4th Cir. 1991). In the California Action, Countrywide has brought suit under the Policies. Here RNC has brought suit under the Commitment Letters, as well as tort and statutory claims based on Countrywide's fraudulent misrepresentations. Each action seeks a different remedy: Countrywide seeks declaratory relief and damages under the Policies while RNC seeks compensatory and punitive damages under the Commitment Letters. (Compl. ¶¶ 75, 82, 89, 107, 114, 119). Critically, these different remedies mean that the California Action will not dispose of the claims in this action, because it cannot possibly provide RNC with the relief it seeks. *See Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 209 (4th Cir. 2006); *Gannett Co., Inc. v. Clark Constr. Group, Inc.*, 286 F.3d 737, 742-43 (4th Cir. 2002). These differences mean the suits are not parallel, *Colorado River* is inapplicable, and Countrywide cannot be entitled to a stay. *See McLaughlin*, 955 F.2d at 935. [2]

### 3.    The *Colorado River* Factors Favor Proceeding With This Action.

Even if the California Action were in state court and parallel to this action, the *Colorado River* factors nonetheless weigh in favor of proceeding. The factors include:

> (1) jurisdiction over the property; (2) inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal law is implicated; and (6) whether the state court proceedings are adequate to protect the parties' rights.

---

[2]    Countrywide asserts the cases are parallel because RNC in its removal papers identified this action as "related" to the California Action. But identifying cases as "related" for judicial administration does not make them "parallel" under *Colorado River*.

*Gannett Company*, 286 F.3d at 741. The Supreme Court has emphasized that, when balancing these factors, the balance is heavily weighted in favor of retaining jurisdiction. *Moses H. Cone*, 460 U.S. at 16; *McLaughlin*, 955 F.2d at 935. The Fourth Circuit has similarly emphasized that "[t]he *Colorado River* doctrine does not give federal courts *carte blanche* to decline to hear cases within their jurisdiction merely because issues or factual disputes in those cases may be addressed in past or pending proceedings before state tribunals." *New Beckley Mining Corp.*, 946 F.2d at 1074.

Three of the *Colorado River* factors are neutral. Both parties concede that neither action is *in rem* and that both forums are equally convenient. Although Countrywide contends that the order in which the forums obtained jurisdiction "only modestly" favors abstention, this factor is actually neutral because both actions have just been filed, and neither has progressed further than the other. *See, e.g.*, *Moses H. Cone*, 460 U.S. at 21 (determining priority based on relative progress of the two actions).

Of the relevant *Colorado River* factors, not one favors abstention. While Countrywide trumpets its concern over supposed piecemeal litigation—which itself is a direct consequences of the parties' contracts—it fails to explain how the Court's retention of jurisdiction could "exacerbate[] the inefficiencies of this litigation beyond those inefficiencies inherent in duplicative proceedings," *Gannett Company*, 286 F.3d at 745. None of Countrywide's authority supports its contention (at 12) that "ordinary piecemeal concerns" support a stay. This case does not involve the "unusual circumstances" present in *Vulcan Chemical Technologies, Inc. v. Barker*, 297 F.3d 332, 342-43 (4th Cir. 2002) (where the district court vacated an arbitration award that had already been confirmed by

a California state court).  Finally, any "piecemeal litigation" (at 12) "is not the result of any choice between the federal and state courts," *Moses H. Cone*, 460 U.S. at 20, but is due to valid forum selection clauses.  Countrywide downplays these clauses without making any effort to explain why this Court should ignore them.[3]

Nor does the fact that RNC's claims arise under state law "forcefully favor[] abstention."[4] (at 13).  Only "in some rare circumstances" will the presence of state law issues weigh in favor of a stay.  *Moses H. Cone*, 460 U.S. at 26; *see also Gannett Company*, 286 F.3d at 747 ("[A]bstention on the basis of the presence of state law, without more, would undermine diversity jurisdiction.").  In this case, the state law claims are routine—breach of contract, fraud, negligent misrepresentation, negligence and unfair and deceptive practices—and Countrywide has not established any rare circumstances that could support its argument.

The sixth and final factor weighs in favor of the Court proceeding with this action. While Countrywide argues (at 13) that the California Action provides an adequate forum to protect RNC's rights, this is obviously untrue in light of the forum selection clauses discussed above.  Even if these clauses were ignored, this factor would be outweighed by the right to a federal forum in diversity cases.  *AXA Corp. Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 279 (7th Cir. 2003).

---

[3]   The forum selection clauses also dispel Countrywide's argument (at 13-14) that RNC has engaged in "forum shopping."

[4]   Countrywide does not explain how the court in the California Action is in any better position than this Court to determine issues of North Carolina law.  *See Great Am. Ins.*, 468 F.3d at 209 ("On balance, Virginia's interest would seem better served by having the … issues decided by a federal court sitting in Virginia, rather than a state court sitting in Alabama.").

Countrywide also argues (at 15) that a stay is appropriate "independent of the abstention doctrine." Countrywide relies on the Supreme Court's decision in *Landis v. North American Co.*, 299 U.S. 248 (1936), a case decided forty years before *Colorado River*. This decision does not provide alternative grounds for a stay. Rather, *Colorado River*, citing *Landis*, held that the inherent discretion of a court to control its own docket was circumscribed by the need for "exceptional circumstances." 424 U.S. at 818. *See also United States v. Cargill, Inc.*, 508 F. Supp. 734, 747-48 (D. Del. 1981).

## B.    The First-To-File Rule Does Not Apply.

Countrywide simply asserts (at 10)—without authority or analysis—that the Court should stay this action "under a straightforward application of the first-to-file rule." It ignores that the first-to-file "rule" is not automatic and requires a case-by-case analysis, including an analysis of whether the proceedings are in fact duplicative. *See Nall v. Piper*, 948 F.2d 1282, 1991 WL 192141, at * 2 (4th Cir. 1991) (affirming district court's refusal to apply first-to-file rule where the district court reasonably concluded that the "balance of convenience tipped in favor of the second action having priority"). Even if the two actions are substantially similar, the Fourth Circuit "has no unyielding 'first[-]to-file' rule." *CACI Int'l, Inc. v. Pentagen Techs Int'l, Ltd.*, 70 F.3d 111, 1995 WL 679952, at *6 (4th Cir. 1995). The first-to-file rule does not apply mechanically; instead the Court must balance the convenience between the two actions. *E.g., Nall*, 1991 WL 192141, at *2; *Quesenberry v. Volvo Group N. Am., Inc.*, No. 1:09cv00022, 2009 WL 648658, at *3 (W.D. Va. Mar. 10, 2009) (citing *Volvo Constr. Equip. N. Am, Inc. v. CLM Equip. Co.,*

*Inc.*, 386 F.3d 581 (4th Cir. 2004)). A thorough analysis shows that first-to-file considerations do not warrant a stay here.

### 1. The Actions Are Not Duplicative.

The purpose of the first-to-file rule is avoidance of duplicative litigation. *United Energy Dists., Inc. v. Rankin-Patterson Oil Co., Inc.*, No. 7:07-3234-HMH, 2007 WL 4568997, at *1 (D.S.C. Dec. 20, 2007). "In determining whether the actions are duplicative, the court must look for differences in issues, parties, and relief sought in both complaints." *Id.* at *2. This action and the California Action are not duplicative because they address different agreements and seek different remedies. *See id.* In the California Action, Countrywide seeks declaratory relief and damages under the Policies. Here, RNC alleges breach of the Commitment Letters and fraudulent misrepresentations. (Compl. ¶¶ 74-122). RNC also seeks compensatory and punitive damages. *Id.* ¶¶ 75, 82, 89, 107, 114, 119. Given the significant differences in the relief sought and the claims asserted, this action and the California Action are not duplicative. *See Smith v. S.E.C.*, 129 F.3d 356, 361 (6th Cir. 1997) (to be duplicative, the other suit "must be materially on all fours with the other. ... [T]he issues must have such an identity that a determination in one action leaves little or nothing to be determined in the other."). In addition, Countrywide's declaratory judgment claims in the California Action will do nothing to resolve the issues here. Those claims do not address the Commitment Letters, whereas this action will resolve all issues between RNC and Countrywide related to the Commitment Letters. *See, e.g.*, *First Nationwide Mortgage Corp. v. FISI Madison, LLC*, 219 F. Supp. 2d 669, 674 (D. Md. 2002).

## 2.    Application Of The First-To-File Rule Weighs Against A Stay.

Determining whether the actions are duplicative is only the first step.  In the present case, the most important consideration here is the forum selection clause in the Commitment Letters:  "Any legal action instituted under this Commitment Letter must be brought in a federal or state court located in Greensboro, North Carolina."  (Gaines Decl. ¶ 3 and Ex. B).  This alone prevents application of the first-to-file rule.  *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 552 (6th Cir. 2007) (the first-filed action was not given priority due to mandatory forum selection clause); *Valpak of Cincinnati, Inc. v. Valpak Direct Marketing Sys., Inc.*, No. 1:05CV00510SSB-TSH, 2005 WL 3244321, at *3 (S.D. Ohio Nov. 30, 2005) ("One of the 'special circumstances' justifying departure from the first-to-file rule is the presence of a forum selection clause." (citing *Internet Law Library v. Southridge Capital Mgmt., LLC*, 208 F.R.D. 59, 64 (S.D.N.Y. 2002)); *see also Jefferson Pilot Life Ins. Co. v. Griffin*, No. 1:07CV0096, 2008 WL 2485598, at *5 (M.D.N.C. June 16, 2008) (refusing to follow the first-to-file rule, in part, because transferring the case to the first-filed forum "could in effect deny JPC and its employees relief as well as the contractual remedy for arbitration in North Carolina that they bargained for").

Countrywide does not argue that the forum selection clauses are invalid, but argues instead (at 14) that their consideration is "premature at this juncture and should be left to the Court that hears the State Court Action in the first instance."  This fails to explain how the California court could determine the applicability and enforceability of the forum selection clauses in the Commitment Letters when these Commitment Letters

are *not before that court*. The Commitment Letters are not at issue in the California Action. As a result, Countrywide's reliance on cases such as *Sokkia Credit Corp. v. Bush*, No. CIV A.99-2480-GTV, 2000 WL 1472746 (D. Kan. Aug. 18, 2000), where the agreement containing the forum selection clause was before the court, is misplaced.

Finally, the first-to-file rule does not apply where two actions are filed within a short timeframe and the first-filed action is no further developed. *See, e.g.*, *Quesenberry*, 2009 WL 648658, at *4 (refusing to apply the first-to-file rule where the first-filed case was no further along and the actions were filed three weeks apart) (citing *Moses H. Cone*, 460 U.S. 1 and *Affinity Memory & Micro, Inv. v. K & Q Enters., Inc.*, 20 F. Supp. 2d 948 (E.D. Va. 1998)). The first-to-file rule does not apply mechanically, instead the Court must balance the convenience between the two actions. *See, e.g.*, *Nall*, 1991 WL 192141, at *2. Here the California Action was filed only two days before this action and is no further along.

## II. THE COURT SHOULD DENY COUNTRYWIDE'S REQUEST FOR AN ORDER COMPELLING ARBITRATION OF ALL CLAIMS

Countrywide argues (at 17-18) that it is entitled to enforce the arbitration clause in the Policies—as to claims under the *Commitment Letters*—because it is an agent of Trustees who are parties to the Policies. Countrywide also argues RNC should be equitably estopped from arguing Countrywide is not a party. Its arguments are meritless.

### A. Countrywide Cannot Enforce The Arbitration Clause In The Policies Because RNC Is Not Asserting Claims Under The Policies.

The very *Arrants* case relied upon by Countrywide (at 17)—which actually denied defendants' motion to compel arbitration—does not permit a referral of claims arising

from the *Commitment Letters* based upon an arbitration clause in the *Policies*: "Even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." *Arrants v. Buck*, 130 F.3d 636, 640 (4th Cir. 1997). There is no "underlying agreement" to arbitrate breaches of the Commitment Letters, whether involving the Trustees or Countrywide as their agent. To the contrary, the Commitment Letters *require* litigation of disputes in the North Carolina courts.

It is clear that RNC asserts no claim here under the Policies. The claims are based on Countrywide's breach of the Commitment Letters (first and second causes of action) and on its fraudulent misrepresentations regarding the mortgage loans (third through sixth causes of action). (Compl. ¶¶ 74-122; *see also* ¶ 1 ("This action arises out of the fraudulent misrepresentations and other misconduct of Countrywide Financial and Countrywide Home Loans, through which they induced United Guaranty to insure billions of dollars of mortgage loans ....")). Since RNC brings no claim under the Policies, there is no basis to allow non-party Countrywide to enforce the Policies' arbitration clause against RNC with respect to claims under the Commitment Letters. *See Wachovia Bank, Nat'l Ass'n v. Schmidt*, 445 F.3d 762, 770 (4th Cir. 2006) (denying motion to compel arbitration where defendants "do not invoke any rights under the terms of the Warrant [containing arbitration clause], nor do they seek to impose any of the Warrant's obligations on [plaintiff] Wachovia").

Countrywide contends that RNC's claims are "intimately founded in and intertwined with" the Policies. It first argues (at 18) that each securitization involved a "set of contracts" that included the Policies. But RNC is not suing on the Policies, and

the contracts have express forum-selection clauses. Countrywide then asserts (at 19) that RNC "admits" the Policies "give rise to the claims asserted in [this action]." (brackets in original). There is no such admission. Countrywide relies upon the Notice Of Pendency Of Other Actions Or Proceedings filed on removal of its California Action, by which RNC which identified the California Action as *related* to this action for purposes of judicial administration. The cases are related—because Countrywide's fraudulent conduct similarly affects both proceedings—but the cases are self-evidently based upon different contracts and claims. Countrywide also argues (at 19) that RNC's implied covenant claim is based on the Commitment Letters and the Policies. But RNC does not claim breach of the implied covenant based on the Policies and will clarify this allegation, if necessary, by amendment of the complaint. Finally, Countrywide contends (at 19) that RNC seeks "rescission-like relief" under the Policies, a charge disproved by the face of the Complaint—which seeks damages under the Commitment Letters.

**B.     Countrywide's Agency Theory Does Not Entitle It to Enforce the Trustees' Arbitration Clause in the Policies.**

Countrywide contends (at 17) that Countrywide Home is entitled to enforce the arbitration clause contained in the Policies because Countrywide Home is an agent of the Trustees under the Policies.[5]

That stretches agency theory too far. The Fourth Circuit recognized in dicta that an introducing broker may enforce an arbitration agreement signed by a clearing broker

---

[5]     Countrywide also asserts it is an agent under the Sale and Servicing Agreements. But RNC does not bring suit on the Sale and Servicing Agreements, and the Court need not consider that agreement further.

against a signatory to the agreement. *Arrants*, 130 F.3d at 641 (denying motion to compel arbitration). But it did not provide as a general rule that any agent of any principal may compel arbitration of any agreement against other parties.

The limited circumstances allowing an agent to take advantage of a principal's agreement to arbitrate would not apply here even if RNC had brought its claims under the Policies, rather than under the Commitment Letters.[6] Countrywide acted in its individual capacity when it misrepresented the mortgage loans and engaged in the other misconduct described in RNC's complaint—not in a representative capacity as agent for the Trustees. *McCarthy v. Azure*, 22 F.3d 351, 360 (1st Cir. 1994) ("Indeed, the distinction between claims aimed at a defendant in his individual as opposed to representative capacity can be found across the law."). Moreover, Countrywide could not have acted as agent for the Trustees under the Policies, because its alleged misconduct *preceded issuance of the Policies*. (Compl. ¶¶ 43-45).

### C. The Doctrine Of Equitable Estoppel Has No Application Here Because RNC Is Not Seeking Any Benefit Under The Policies.

Finally, Countrywide contends (at 18) RNC should be equitably stopped from refusing to arbitrate its claims. Equitable estoppel applies when a plaintiff tries to have it

---

[6]   The First Circuit has explained that the only agents entitled to enforce an arbitration agreement are individuals acting on behalf of a company. *McCarthy v. Azure*, 22 F.3d 351, 357 (1st Cir. 1994); *accord Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir. 1993) (allowing broker to enforce employer's arbitration agreement); *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993) (allowing managing agent of insurance syndicate to enforce employer's arbitration agreement). The reason is that when a party enters into an agreement with a company, the company's promises can only be fulfilled by individuals acting on its behalf. *McCarthy*, 22 F.3d at 357. The authority on which Countrywide relies follows this rule. *Collie v. Wehr Dissolution Corp.*, 345 F. Supp. 2d 555, 557 (M.D.N.C. 2004) (allowing general manager and owner to enforce company's arbitration agreement).

both ways: it seeks to sue on a contract that provides for arbitration, and yet denies any obligation to arbitrate. *Wachovia Bank*, 445 F.3d at 769 ("This legal principle rests on a simple proposition: it is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage."); *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 160-61 (4th Cir. 2004) ("In the context of arbitration, the doctrine [of equitable estoppel] applies when one party attempts to hold [another party] to the terms of [an] agreement while simultaneously trying to avoid the agreement's arbitration clause." (brackets in original)).

But here RNC does not seek any benefit under the Policies. Its claims against Countrywide arise out of the Commitment Letters and Countrywide's fraudulent misrepresentations. As a result, equitable estoppel has no application. *See Wachovia Bank*, 445 F.3d at 769. RNC can fairly allege breach of the Commitment Letters and tortious misconduct without being bound by the arbitration clause contained in the Policies.

*Wachovia Bank* illustrates why equitable estoppel does not apply. An investor claimed Wachovia Bank had fraudulently induced him to enter into an investment deal, and Wachovia Bank sought to enforce an arbitration clause contained in a stock warrant issued pursuant to this deal. *Id.* at 766. The Fourth Circuit held the warrant was "only tangentially related to the heart of" the investor's claims because, despite any factual connection between the warrant and the claims, "the terms of the Warrant are largely irrelevant to proof of" fraudulent inducement. *Id.* at 770; *accord DP Solutions, Inc. v. Help Desk Now, Inc.*, No. 1:08 CV 104, 2008 WL 4543785, at *3 (M.D.N.C. Oct. 9,

2008) (declining to apply equitable estoppel because reliance on purchase agreement containing arbitration clause "is not necessary to resolve the debt dispute"); *R.J. Griffin & Co.*, 384 F.3d at 163-64 (declining to apply equitable estoppel because the association was "not seeking a direct benefit" from the contract containing an arbitration clause). Under the same principles, because RNC neither brings claims under the terms of the Policies nor seeks any benefit under the Policies, equitable estoppel cannot apply.[7]

Countrywide's contention (at 19) that RNC effectively seeks to recover its losses under the Policies is irrelevant because RNC is not asserting any term of the Policies. *Wachovia Bank*, 445 F.3d at 770 (recovering cost of warrant does not require enforcement of arbitration clause contained in warrant).

Finally, Countrywide argues (at 19) the Court should compel arbitration because this is what the parties "would have intended." This counterfactual assertion is not enough as a matter of law, and is also disproved by the Commitment Letters themselves: in fact, the parties "would have intended" and did intend that all claims based upon the Commitment Letters, including all claims in RNC's Complaint, be adjudicated in federal

---

[7] Countrywide also argues (at 17) that the "intertwined claims doctrine" requires arbitration. The Fourth Circuit compelled arbitration in *Long v. Silver* because plaintiff's claims against a corporation, which was a signatory to an arbitration agreement, were intertwined with its claims against non-signatory shareholders of that corporation. 248 F.3d 309, 320 (4th Cir. 2001); *accord Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 758 (11th Cir. 1993). Countrywide fails to argue—let alone establish—that it has any corporate relationship with the Trustees, who are signatories to the Policies. In any case, RNC is not here asserting claims under the Policies and the doctrine is inapposite.

or state court in North Carolina.[8]  Accordingly, the Court should compel the parties to live by the terms of their agreement, and deny Countrywide's motion.

**<u>CONCLUSION</u>**

For the reasons set forth above, RNC respectfully requests that the Court deny Countrywide's motion to stay and its motion to compel arbitration.

---

[8] It is not clear what relief Countrywide is requesting should the Court decide to compel arbitration.  Countrywide asks (at 16 n.6) the Court to compel arbitration without designating where, although it seems to favor proceeding in California.  Countrywide's request ignores the Federal Arbitration Act, 9 U.S.C. § 4, under which an ordered arbitration "shall be within the district in which the petition for an order directing such arbitration is filed," which in this case is North Carolina.

This the 18th day of May 2009.

/s/ James T. Williams, Jr.
James T. Williams, Jr.

/s/ D.J. O'Brien, III
D.J. O'Brien, III

OF COUNSEL:

James T. Williams, Jr.
N.C. State Bar No. 4758
Robert A. Singer
N.C. State Bar No. 8979
D.J. O'Brien, III
N.C. State Bar No. 35481
BROOKS, PIERCE, MCLENDON,
  HUMPHREY & LEONARD, L.L.P.
Suite 2000 Renaissance Plaza
230 North Elm Street (27401)
Post Office Box 26000
Greensboro, NC 27420-6000
Telephone:   336-373-8850
Facsimile:   336-378-1001
jwilliams@brookspierce.com
rsinger@brookspierce.com
dobrien@brookspierce.com

Philippe Z. Selendy
David Elsberg
Neil G. Cave
Peter N. Tsapatsaris
Elizabeth M. Devaney
QUINN EMANUEL URQUHART
OLIVER &HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, New York  10010-1601
(212) 849-7000

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 18, 2009, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send notification of such filing to

the following:

> W. Andrew Copenhaver
> G. Michael Barnhill
> Debbie W. Harden
> WOMBLE CARLYLE SANDRIDGE & RICE
> One Wachovia Center, Suite 3500
> 301 South College Street
> Charlotte, NC 28202
> acopenhaver@wcsr.com
> mbarnhill@wcsr.com
> dharden@wcsr.com
>
> Attorneys for Defendants.

I further certify that I will mail the foregoing via first class mail, postage prepaid to the

following non-CM/ECF participants:

> David M. Halbreich
> John N. Ellison
> REED SMITH LLP
> 2500 One Liberty Place
> 1650 Market Street
> Philadelphia, PA 19103-7301
>
> Douglas E. Cameron
> Traci S. Rea
> REED SMITH LLP
> 435 Sixth Avenue
> Pittsburg, PA 15219
>
> Attorneys for Defendants.

> /s/ D.J. O'Brien, III
> D.J. O'Brien, III