IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:09-cv-00203

UNITED GUARANTY RESIDENTIAL
INSURANCE COMPANY OF NORTH
CAROLINA,

        Plaintiff,

  vs.

COUNTRYWIDE FINANCIAL CORP.
and COUNTRYWIDE HOME LOANS,
INC.,

        Defendants.

**Reply Memorandum of Law in Support of Motion To Dismiss Under Rules 12(b)(6) and 12(b)(7)**

# TABLE OF CONTENTS

RESPONSE TO PLAINTIFF'S DESCRIPTION OF "RELATED LITIGATIONS" ........ 1

ARGUMENT .................................................................................................................. 2

I. THIS CASE SHOULD BE DISMISSED PURSUANT TO RULE 19 ................... 2

    A. Given Servicing LP's Interest In The Policy, It Is A Required Party ........... 2

    B. An Agency Interest Does Not Foreclose Necessary Party Status ................. 3

    C. United Guaranty Has Adequate Remedies if this Action is Dismissed. ....................................................................................................... 5

    D. Servicing LP's Citizenship Cannot Be Ignored. ........................................... 5

II. UNITED GUARANTY'S TORT AND CHAPTER 75 CLAIMS SHOULD BE DISMISSED BECAUSE ITS ALLEGATIONS FAIL TO STATE A CLAIM. ................................................................................................................... 6

    A. United Guaranty's Tort and Chapter 75 Claims Should Be Dismissed Because They Merely Restate Its Breach of Contract Claims. ..................... 6

    B. Because United Guaranty Had Access at All Times to the Data It Now Claims Shows Fraud, It Cannot Establish Reliance Or Timeliness. ..................................................................................................... 8

    C. The Fraud and Negligent Misrepresentation Claims Lack Specificity ....... 10

CONCLUSION ........................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Angell v. Kelly*, No. 1:01CV00435, 2006 WL 3479010 (M.D.N.C. Nov. 30, 2006) .......... 8

*Audi of Smithtown, Inc. v. Volkswagen of America, Inc.*, No. 08-CV-1773, 2009 WL 385541 (E.D.N.Y. Feb. 11, 2009) ................ 5

*Calloway v. Wyatt*, 246 N.C. 129, 97 S.E.2d 881 (1957) .............................................. 9, 10

*In re Countrywide Fin. Corp. Secs. Litig.*, 588 F.Supp.2d 1132 (C.D. Cal. 2008) ............. 9

*Delcon Const. Corp. v. U.S. Dept. of Housing and Urban Dev't*, 205 F.R.D. 145 (S.D.N.Y. 2002) ...................................................................................................... 3, 4

*Food Lion LLC v. Schuster Marketing Corp.*, 382 F.Supp.2d 793 (E.D.N.C. 2005) .......... 7

*Foremost Guar. Corp. v. Meritor Sav. Bank*, 910 F.2d 118 (4th Cir. 1990) ...................... 8

*Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418 (4th Cir. 1990) .............................. 10

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir. 1999) ............... 10

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 180 F. Supp. 2d 465 (S.D.N.Y. 2001) ............................................................................................................ 6

*Navarro Sav. Ass'n v. Lee,* 446 U.S. 458 (1980) ............................................................... 5

*North Carolina Mut. Life Ins. Co. v. McKinley Fin. Servs.,* No. 1:03CV00911, 2005 WL 3527050 (M.D.N.C. Dec. 22, 2005) ................................................................. 7

*Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186 (2d Cir. 2003) ............................... 6

*Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968) ................... 2

*R-Delight Holding LLC v. Anders*, 246 F.R.D. 496 (S.D.N.Y. 2007) .......................... 3, 4

*Soberay Machine & Equip. Co. v. MRF Limited*, 181 F.3d 759 (6th Cir. 1999) ............... 4

*Strum v. Exxon Co.*, 15 F.3d 327 (4th Cir. 1994) .............................................................. 7

**Rules**

Fed.R.Civ.P. 19 ................................................................................................................... 5

**RESPONSE TO PLAINTIFF'S DESCRIPTION OF "RELATED LITIGATIONS"**

Plaintiff is inaccurate in its attempt to portray its piecemeal litigation strategy as a necessary evil, mandated by Commitment Letter forum selection clauses. (Opp. Memo [Doc. 19] at 6-8) After all, the United Guaranty companies stopped paying claims on many Policies, citing a "fraud" that purportedly spanned them all. The forum selection clauses it now asserts appear in individual Commitment Letters, but do not specify how they apply to a dispute that crosses multiple Commitment Letters and Policies. The individual Commitment Letters specify different forums (*e.g.*, Gaines Decl., Exs. A-B [Doc. 21-2, 21-3], and the Policies do not specify a judicial forum (*e.g.*, Mot. Dismiss, Ex. B [Doc. 6-3] § 6.5) The link between the Letters and Policies—which plaintiff itself alleges [*see* p. 2, *supra*]—shows this dispute is inseparable from the Bulk Policy, and plaintiff's attempt to plead stand-alone Commitment Letter lawsuits is forum-shopping.

Since the contracts do not specify a forum for a global dispute like this one, moreover, plaintiff could have responded to the State Court Action by raising all of its non-arbitrable claims there. And although plaintiff says "it had no means to include Countrywide in" the arbitration plaintiff initiated under the Bulk Policy (Opp. Memo at 7), plaintiff ignores that Countrywide had notified plaintiff in its March 18, 2009, State Court Action complaint that Countrywide was initiating arbitration with plaintiff under the Bulk Policy, and Countrywide initiated arbitration two days later.[1] In short, if plaintiff had wanted to join all non-arbitrable issues in this dispute—as logic and efficiency would warrant—it easily could have accomplished that result.

Third, plaintiff omits to mention that after Countrywide filed its pending motions, plaintiff removed the State Court Action to federal court on the purported ground that

---

[1] Plaintiff misstates the date on which Countrywide originated arbitration as "April 6, 2009." (Opp. Memo at 7) Countrywide did so on March 20, 2009.

diversity of citizenship jurisdiction exists over that Action because Servicing LP's citizenship does not count. (*See* Mot. Stay, Ellison Decl [Doc. 15]) But if a federal court had jurisdiction to hear the State Court Action, plaintiff could have simply removed that Action at the outset and raised its CA Federal Action claims by counterclaim. That plaintiff instead first filed multiple lawsuits that each omit Servicing LP as a party and each seek to separate the Commitment Letters from the Policies to which they relate shows plaintiff understood Servicing LP *is* an indispensable party to claims relating to the Policies, but cannot be joined without destroying diversity jurisdiction.

## ARGUMENT

### I. THIS CASE SHOULD BE DISMISSED PURSUANT TO RULE 19

Although plaintiff urges a hypertechnical approach—arguing an agent can never be indispensable and other categorical views—the analysis is equitable and flexible. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 119 (1968).

### A. Given Servicing LP's Interest In The Policy, It Is A Required Party

Plaintiff centers its Rule 19 opposition on a claim that "performance under the Policies is not at issue," and therefore, Servicing LP's interests in the Policies are "irrelevant," and hence its interest is "remote." (Opp. Memo [Doc. 19] at 9) While plaintiff has attempted, for its own tactical purposes, to frame this action as one brought solely under the Commitment Letters, the Policies plainly are at issue. Indeed, plaintiff admitted in its California papers removing the State Court Action that "the mortgage insurance policies" "give rise to the claims asserted in [this action]." (Mot. Stay, Ellison Decl. [Doc. 15], Ex. C) Plaintiff's "implied covenant" claim relies on a covenant allegedly implicit in "the Commitment Letters and Insurance Policies." (Complaint ¶83) Its breach of contract claim alleges that Countrywide Home's "representations and warranties in the Commitment Letters . . . induced [it] to enter into each Insurance Policy. . . ." (*Id*. ¶79.) It seeks relief from "payments on current and future claims under the

- 2 -

Case 1:09-cv-00203-UA-PTS   Document 22   Filed 05/26/09   Page 5 of 15

Policies," and seeks rescission of the Policies in arbitration while seeking damages that produce duplicative rescission-like relief in this Court. (*Id.* ¶73 & Prayer for Relief.)

The court in *Delcon Const. Corp. v. U.S. Dept. of Housing and Urban Dev't*, 205 F.R.D. 145, 147 (S.D.N.Y. 2002) rejected a similar effort to artificially separate claims relating to a contract from the contract. There, the plaintiff entered into a construction contract with Russand, who purchased the property with a HUD-secured mortgage. *Id.* at 146. Russand defaulted on the mortgage, and sued Delcon in state court alleging breach of the construction contract. *Id.* Delcon sued HUD under the mortgage for quantum meruit and unjust enrichment. *Id.* HUD moved to join Russand, and Delcon objected, asserting the construction contract was not at issue and that Russand was not a necessary party. *Id.* The court granted the motion, finding that complete relief could not be afforded without resolving the underlying contract, and thus, Russand was a necessary party. *Id.* at 146-147.

Similarly, here, to "effectively and completely adjudicate this dispute" it will be necessary to address the Bulk Policy, so Servicing LP must be present. Because plaintiff erroneously claims "performance under the Policies is not at issue" [Opp. Memo at 9], it does not address Servicing LP's substantial interest in performance issues that defendants identified. Plaintiff thus has failed to answer defendant's "required" party showing.

**B.     An Agency Interest Does Not Foreclose Necessary Party Status**

Plaintiff next argues that Rule 19 "does not require joinder of agents." But in *R-Delight Holding LLC v. Anders*, 246 F.R.D. 496 (S.D.N.Y. 2007), for example, the court held otherwise. There, plaintiff brought an action against defendant, Mary Anders, for breach of a contract to purchase real property that defendant's son Stephen had negotiated and signed as her agent. The Anders had previously filed a state court action against the plaintiff for tort, contract and equity claims. *Id.* at 498. The plaintiff then sued Ms. Anders in federal court, not naming Stephen because to do so would have

- 3 -

destroyed diversity. *Id.* Ms. Anders moved to dismiss, arguing, among other things, that, because her son had "alone attended the auction, negotiated the agreement, and signed the contract" he must be joined for her to be accorded complete relief. *Id.* at 500. The Court agreed that, while plaintiff had "access to complete relief in this case if it prevails, Mary Anders would not necessarily gain complete relief because any potential counterclaims depend on Stephen Anders's involvement." *Id.* The Court dismissed under Rule 19(a)(1) in favor of the existing state court action. *Id.* at 504*; accord, e.g., Soberay Machine & Equip. Co. v. MRF Limited*, 181 F.3d 759, 765 (6th Cir. 1999) (holding agent was indispensable party; "we disagree with Plaintiff's contention that a party acting as an agent for a principal may never be considered an indispensable party for purposes of Rule 19(b)").

The *R-Delight* court also found persuasive the fact that dismissing the action would avoid multiple lawsuits: "This court notes that the interests furthered under subdivision (a) of Rule 19 are not only those of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter. *Id.* at 503; *accord Delcon* 205 F.R.D. at 147 (Joinder standard is designed to require "the presence of all persons who have an interest in the litigation so that any relief that may be awarded will effectively and completely adjudicate the dispute.").

Similarly, here, although plaintiff dismisses Servicing LP's interest in the Policy on the ground that plaintiff "brings only claims for damages, and the claims do not run against CW Servicing" [Opp. Memo at 8], the Court must also consider defendants' counterclaims that *plaintiff* breached its Bulk Policy duties. Because those counterclaims will place at issue the Policy that Servicing LP must apply in prosecuting claims, it should be allowed to participate. And so holding will serve "the public in avoiding repeated lawsuits on the same essential subject matter." *R-Delight*, 246 F.R.D. at 503.

### C. United Guaranty Has Adequate Remedies if this Action is Dismissed.

The California court that hears the State Court Action can decide United Guaranty's claims, including any claim as to how the forum selection clauses in individual Commitment Letters should be applied to this broader multi-Policy dispute.[2] In addition, as detailed in Countrywide's motion to compel arbitration, plaintiff can, and should, pursue its claims in one of the pending arbitrations.

### D. Servicing LP's Citizenship Cannot Be Ignored.

Although "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy" *Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 461 (1980), under Rule 19, the Court need not consider Servicing LP's citizenship <u>unless and until</u> it first determines that Servicing LP is a "required party." If the Court makes that determination, then, by definition, Servicing LP is not merely a nominal or formal party, but is, rather, a "real party" to the controversy. *See., e.g.*, *Audi of Smithtown, Inc. v. Volkswagen of America, Inc.*, No. 08-CV-1773, 2009 WL 385541, at *4 (E.D.N.Y. Feb. 11, 2009) ("[I]f a party is not simply a nominal or formal party but is named because it is a "necessary party" . . . that has interests that will be directly affected by the adjudication of the lawsuit, then such party is properly considered for purposes of diversity of jurisdiction, even if there is no specific cause of action asserted against that party.").

Moreover, Servicing LP's citizenship *does* count because it is the party that is charged with the power to hold, manage and dispose of assets for the benefit of others. *See Navarro*, 446 U.S. at 465 (trustee's citizenship counted because it had those powers). Plaintiff's cited cases are distinguishable from this case because in those cases, *LaSalle*

---

[2] Countrywide obviously is willing to waive the North Carolina choice of forum clause in particular Commitment Letters to allow the comprehensive State Court Action to proceed in California.

*Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 180 F. Supp. 2d 465 (S.D.N.Y. 2001), and *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186 (2d Cir. 2003), the disputed party had different powers or the plaintiff had been chosen to sue as a representative of the "real party" to create or defeat diversity.[3]

## II. UNITED GUARANTY'S TORT AND CHAPTER 75 CLAIMS SHOULD BE DISMISSED BECAUSE ITS ALLEGATIONS FAIL TO STATE A CLAIM.

### A. United Guaranty's Tort and Chapter 75 Claims Should Be Dismissed Because They Merely Restate Its Breach of Contract Claims.

Plaintiff does not dispute that its tort and Chapter 75 claims rest on the same alleged "misrepresentations" about Countrywide's underwriting that is the basis of its breach of contract claims [Compl. ¶¶78, 86, 96, 108, 115], or that it claims the same damages [*id*., ¶¶80, 87, 104, 112, 117]. It argues, however, that it stated "independent" or "identifiable and distinct" tort claims through its allegations that defendants made misrepresentations in the Commitment Letters, in the loan tapes, in technical guidelines and in public statements that induced it to enter the contract. (Opp. Memo at 13-14)

As to all but the public statements, however, plaintiff ignores that the purported "misrepresentations" were nothing other than the contractual undertaking itself. Apart from the parties' contract, Countrywide had no legal duty to plaintiff to comply with any particular underwriting guidelines, supply any information on a loan tape, or do any of the things plaintiff says it should have done. In entering their contract, moreover, the parties agreed on what information Countrywide would supply or make available, *and dispositively, specified the contractual remedies that would apply if Countrywide's representations were claimed to be deficient*. Under sections 2.2, 2.5 and 2.8 of the Bulk

---

[3]The *LaSalle* Court held that the party whose citizenship must be considered was the trustee who "possesses certain customary powers to hold, manage, and dispose of assets for the benefit of the certificateholders" under the mortgage securitization transaction, but the servicer did not have such powers. 180 F.Supp.2d at 470. Servicing LP does have such powers under the Pooling and Servicing Agreement, and so has a "real and substantial" interest in this action. *See* Chen Decl., Ex.1 [Doc. 8-2].

Policy [Doc. 6-3, Ex. B], the parties specified that inaccuracies in Countrywide's representations would provide plaintiff remedies relating to *the particular loan files to which the inaccuracies related*.  Plaintiff seeks to convert that agreement into tort claims that, if allowed, would permit plaintiff to avoid coverage *with respect to all loan files—including the 45% which even plaintiff admits contain no even arguable deficiency*.

That the purported "misrepresentations" were part of the contractual undertaking itself is what makes this case analogous to the broker's agreement to write policies for an insurer "in accordance with the insurer's underwriting procedures and guidelines" in *North Carolina Mut. Life Ins. Co. v. McKinley Fin. Servs.*, No. 1:03CV00911, 2005 WL 3527050, at *8-9 (M.D.N.C. Dec. 22, 2005).  Plaintiff cannot distinguish its allegations from those in *McKinley*—indeed, it does not even mention *McKinley*.

Instead, plaintiff cites *Food Lion LLC v. Schuster Marketing Corp.*, 382 F.Supp.2d 793 (E.D.N.C. 2005).  But *Food Lion* noted, "only in 'carefully circumscribed' circumstances has North Carolina recognized an independent tort arising out of a breach of contract." *Id.* at 800.  The Court "asked whether the alleged problems could be dealt with solely through contract law." *Id.*  And, it "focused on the importance of facts in the pleading" that "were not merely 'assertions that under the [agreement], [plaintiff] failed to meet it's obligations,' but were instead 'behavior outside of the scope of the contract.'" *Id.*  Plaintiff's other cited cases are to the same effect.  The key distinction is that the contract here specified the data Countrywide would supply or representations it would make and stated remedies for inaccuracies.  Thus, the tort claims do not involve "behavior outside the scope of the contract", *id*., and "[w]hatever injury [plaintiff] may have sustained here resulted from a possible breach of a commercial relationship memorialized in contract." *Strum v. Exxon Co.*, 15 F.3d 327, 331 (4th Cir. 1994).

As for the alleged public statements, plaintiff's attempt to raise a tort claim based on those statements fail on ground that such puffery cannot be the basis of reasonable reliance. (*See* p. 9) The tort and chapter 75 claims should therefore be dismissed.

**B. Because United Guaranty Had Access at All Times to the Data It Now Claims Shows Fraud, It Cannot Establish Reliance Or Timeliness.**

Plaintiff does not deny it had full access to the very loan files that contain the information on which it now bases its claims, but argues that "regardless of any right of access," it had the right to rely on Countrywide's representations in lieu of conducting due diligence "as part of the agreed 'delegated underwriting' model." (Opp. Memo at 3)

Plaintiff has the law wrong—its reliance is unreasonable if it had "full opportunity to make inquiry." *Angell v. Kelly*, No. 1:01CV00435, 2006 WL 3479010 at * 6 (M.D.N.C. Nov. 30, 2006). Although *Foremost Guar. Corp. v. Meritor Sav. Bank*, 910 F.2d 118, 127 (4th Cir. 1990) rejected United Guaranty's similar effort 20 years ago to renege, plaintiff spins *Foremost* as resting on the ground that United Guaranty's reliance in that case was unreasonable because it "had in [its] possession the written memoranda contradicting the oral representations." (Opp. Memo at 16) But the Fourth Circuit held United Guaranty was charged with knowledge of *information available to* it: "we equate the knowledge the insurers could have gained through reasonable inquiry with actual knowledge of facts. . . ." *Id.* Since the information on which plaintiff bases its fraud claim was likewise available to it, its fraud/misrepresentation claims here likewise fail.

Plaintiff's argument that "[t]his is not a case where the parties had equal access to the same information" (Opp. Memo at 16) simply ignores the terms of the Commitment Letters that plainly recite such a right of access (Mot. Dismiss Memo [Doc. 12] at 3-4; Mot. Dismiss, Ex. A [Doc. 6-2] §§ 5.1, 6.1) And plaintiff again confuses the distinction between a contract and tort claim in its argument that its reliance was reasonable because the parties agreed to a "'delegated' underwriting model" under which plaintiff "was

contractually" "entitled to rely" on Countrywide's representations and warranties. (Opp. Memo at 15) A tort claim may arise only from a duty that is "independent" of the contract's duties, and the *reasonable* reliance tort element represents a balance of the public policies "on the one hand, to suppress fraud and on the other, not to encourage negligence and inattention to one's own interest." *Calloway v. Wyatt*, 246 N.C. 129, 134, 97 S.E.2d, 881, 886 (1957). Thus, although any agreement to "delegated underwriting" might give rise to contract remedies, plaintiff cannot sue in tort based on information it could have reviewed earlier.

Moreover, although reliance is ordinarily a fact question that cannot be decided on a motion to dismiss, reliance may be determined here because—unlike in most cases—plaintiff's right to access the very information that it now claims revealed a fraud is established by the allegations of the Complaint and cognizable Commitment Letter terms.

A similar point defeats plaintiff's statute of limitations argument. (Opp. Memo at 17) Because "discovery" turns on when the alleged fraud "should have been discovered in the exercise of reasonable diligence," which is measured by plaintiff's "capacity and opportunity to discover the fraud" [Doc. 12 at 16], plaintiff's self-serving allegation that it did not discover the fraud until later cannot overcome the legal significance of its undisputed access to all information at the time of the transaction.

Finally, plaintiff is wrong that it could reasonably rely on the public statements it alleges because "representations regarding the quality of a company's underwriting are not puffery. . . ." (Opp. Memo at 16) Granted, a district court permitted securities fraud claims against Countrywide to proceed past the pleadings based on public statements concerning underwriting even though "in the vast majority of cases such statements would be nonactionable puffery." *In re Countrywide Fin. Corp. Secs. Litig.*, 588 F.Supp.2d 1132, 1153 (C.D. Cal. 2008). But that court did so because that complaint detailed a clear link between the alleged public statements and their impact on the market

for those securities. *See id.* at 1153-55. Not only has plaintiff failed to detail any such link here, but it is absurd to infer that a sophisticated insurer *reasonably* relied on such puffery before entering into a complex transaction where it had unfettered access to the underwriting files themselves. Thus, this case is one of "the vast majority of cases [in which] such statements [are] nonactionable puffery." *Id.* The Court should dismiss the fraud and negligent misrepresentation claims on reliance or statute of limitations grounds.

### C.  The Fraud and Negligent Misrepresentation Claims Lack Specificity

Plaintiff unpersuasively attempts to portray conclusory allegations that lump together thousands of loan transactions as compliance with the requirement that it plead with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby" *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999).

Plaintiff also claims *Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 422 (4th Cir. 1990) "does not require a showing of reliance." (Opp. Memo at 20) *Frank M. McDermott* does so plainly: "It is well settled under North Carolina law . . . that a complaint claiming fraud is fatally defective unless it alleges detrimental reliance and damages proximately flowing from such reliance, with particularity." 898 F.2d at 421. Plaintiff misquotes the case as stating "a defense of fraud may be set up without a showing of particular reliance" even though the Fourth Circuit actually stated: "Thus, <u>*unlike* an action seeking affirmative relief on the grounds of fraud</u>, a defense of fraud. . . ." *Id.* at 422. Apart from misstating the law, plaintiff does not state how it satisfied the requirement that it plead reliance with particularity. It did not satisfy that requirement.

### CONCLUSION

The Court should dismiss this action or should dismiss all tort claims.

- 10 -

Case 1:09-cv-00203-UA-PTS   Document 22   Filed 05/26/09   Page 13 of 15

This the 26th day of May, 2009.

/s/ G. Michael Barnhill
W. Andrew Copenhaver, N.C. Bar #944
G. Michael Barnhill, N.C. Bar #9690
Debbie W. Harden, N.C. Bar #10576
**WOMBLE CARLYLE SANDRIDGE & RICE**
*A Professional Limited Liability Company*
One Wachovia Center, Suite 3500
301 South College Street
Charlotte, NC  28202
Telephone:  (704) 331-4900
acopenhaver@wcsr.com
mbarnhill@wcsr.com
dharden@wcsr.com

OF COUNSEL:

David M. Halbreich
John N. Ellison
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103-7301
(215) 851-8100

Douglas E. Cameron
Traci S. Rea
**REED SMITH LLP**
435 Sixth Avenue
Pittsburg, PA  15219
(412) 288-3131

*Attorneys for Countrywide Financial Corp., and Countrywide Home Loans, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of May, 2009, I electronically filed **DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

> James T. Williams, Jr.
> Robert A. Singer
> Brooks, Pierce, McLendon, Humphrey & Leonard, LLP
> Renaissance Plaza, Suite 2000
> 230 North Elm Street (27401)
> Post Office Box 26000
> Greensboro, NC  27420-6000
> jwilliams@brookspierce.com
> rsinger@brookspierce.com

I further certify that I will mail the foregoing via first class mail, postage prepaid to the following non CM-ECF participants:

> Philippe Z. Selendy
> David Elsberg
> Neil G. Cave
> Peter N. Tsapatsaris
> Elizabeth M. Devaney
> QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
> 51 Madison Avenue, 22nd Floor
> New York, NY 10010-1601
>
> Attorneys for Plaintiff

>                                         /s/ G. Michael Barnhill
>                                         G. Michael Barnhill