UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:09-cv-00203

United Guaranty Residential Insurance
Company of North Carolina,

        Plaintiff,

vs.

Countrywide Financial Corp., and
Countrywide Home Loans, Inc.,

        Defendants.

**Reply In Support Of Motion To Stay Based On**

**Judicial Efficiency Grounds In Light Of Earlier-Filed And**

**More Comprehensive Action, Or In The Alternative,**

**To Compel Arbitration**

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................I

INTRODUCTION .........................................................................................................1

    I.   PLAINTIFF ERRONEOUSLY CLAIMS THE COMMITMENT LETTER FORUM SELECTION CLAUSES MANDATED ITS PIECEMEALING..............1

    II.  AFTER OPPOSING THIS MOTION, PLAINTIFFS HAVE ADMITTED IN CALIFORNIA THAT THIS ACTION MUST BE ARBITRATED........................2

    III. A STAY ALSO IS PROPER UNDER THE FIRST-FILED RULE OR COLORADO RIVER .................................................................................................5

CONCLUSION.............................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

Am. Bankers Ins. Group, Inc. v. Long, 453 F.3d 623 (4th Cir. 2006) ............................ 3, 4
Arthur Andersen LLP v. Carlisle, 129 S.Ct. 1896 (2009) ............................................... 4
AXA Corp. Solutions v. Underwriters Reinsurance Corp., 347 F.3d 272 (7th
    Cir. 2003) ................................................................................................................... 8
Automated Sys. and Programming, Inc. v. Cross, 176 F.Supp. 2d 458 (D.
    Md. 2001) ................................................................................................................. 10
Collie v. Wehr Dissolution Corp., 345 F. Supp. 2d 555, (M.D.N.C. 2004) ..................... 5
Colorado River Water Conservation Dist. v. United States, 424 U.S. 800
    (1976) ................................................................................................................... 8, 10
Covance Labs., Inc. v. Orantes, 338 F. Supp. 2d 613 (D. Md. 2004) ................... 7, 9, 10
Ellicott Mach. Corp. v. Modern Welding Co., 502 F.2d 178 (4th Cir. 1974) .................. 6
Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc., 180 F.3d 896 (7th
    Cir. 1999) ................................................................................................................... 7
Ingersoll-Rand Fin. Corp. v. Callison, 844 F.2d 133 (3rd Cir. 1988) ............................. 8
Lumen Constr. Inc. v. Brant Constr. Co., 780 F.2d 691 (7th Cir. 1986) ........................ 7
Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. (1983) .................... 10
Nakash v. Marciano, 882 F.2d 1411 (9th Cir. 1989) .................................................... 10
New Beckley Mining Corp. v. Int'l Union, UMWA, 946 F.2d 1072, 1074
    (4th Cir. 1991) ........................................................................................................... 8
R.J. Griffin & Co. v. Beach Club II Homeowners' Ass'n, Inc. 384 F.3d 157
    (4th Cir. 2004) ........................................................................................................... 5
Silvaco Data Sys., Inc. v. Tech. Modeling Assocs., Inc., 896 F. Supp. 973
    (N.D. Cal. 1995) ...................................................................................................... 11
Sokkia Credit Corp. v. Bush, No. A.99-2480-GTV, 2000 WL 1472746 (D.
    Kan. 2000) ................................................................................................................. 8
Sto Corp. v. Lancaster Homes, Inc., 11 Fed. Appx 182 (4th Cir. 2001) ......................... 8
Vulcan Chem. Techs., Inc. v. Barker, 297 F.3d 332 (4th Cir. 2002) ............................... 7
Wachovia Bank, N.A. v. Schmidt, 445 F.3d 762 (4th Cir. 2006) .................................... 2

State Cases

Brown v. Centex Homes, 171 N.C. App. 741, 745-46, 615 S.E.2d 86 (2005) ................ 4

Federal Statutes

9 U.S.C. § 3 .................................................................................................................... 5

## INTRODUCTION

Since defendants moved to stay or compel arbitration, plaintiff's inconsistent positions asserted in their multiple forums have crystallized the case both for staying this action and for compelling arbitration. After arguing in opposition to this motion that the Bulk Policy's arbitration agreement did not apply to the Countrywide defendants because they are not a signatory to the Policy, plaintiff moved the California court to compel the Countrywide defendants to arbitrate *under the Bulk Policy* without even *mentioning* to that court either (1) its opposition to Countrywide's motion to compel here or (2) the non-signatory point that drew its opposition in this action.[1]

Plaintiff thus confirms two points: (a) the Bulk Policy arbitration agreement applies to Countrywide—plaintiff has so admitted by moving to compel Countrywide to arbitrate under that Policy and (b) proceeding on multiple fronts would be an *extraordinarily* wasteful duplication of judicial resources and is fraught with *extraordinary* potential for inconsistent rulings, thus warranting a stay.

## I. PLAINTIFF ERRONEOUSLY CLAIMS THE COMMITMENT LETTER FORUM SELECTION CLAUSES MANDATED ITS PIECEMEALING

As it has asserted in other briefs, Plaintiff again argues that its claims "cannot be brought in the California Action." (Opp. at 7) In reply, Countrywide relies on its discussion of this point in its motion to dismiss papers (Reply in Support of Mot. Dismiss (Doc. 22) at 5). It simply incorporates that response with two additional observations. First, the Commitment Letters by their terms addressed a *proposed* transaction and did not speak to disputes that might arise in the event Policies issued, nor to disputes that spanned multiple issued Policies and Commitment Letters and resting on a common core of allegations. It is unreasonable to infer that merely because each Letter specifies a

---

[1] *See* Decl. of Ellison in Support of Reply on Mot. To Stay or Compel Arb. ("Ellison Stay Reply Decl."), Ex. B.

forum for a dispute arising under *that* Letter, the parties' contracts collectively contemplate fragmenting a dispute like this one into pieces that would duplicate resources and subject the parties to potentially inconsistent rulings.

Second, since Countrywide had followed the dispute/forum provisions in the *Policies* in filing its State Court Action, plaintiff was free to do so as well and assert its claims in that Action. Plaintiff's election to instead claim that individual Commitment Letter forum clauses govern was not mandatory, but a tactical choice. This is well illustrated by plaintiff's inaccurate statement that "there is no 'underlying agreement' to arbitrate breaches of the Commitment Letters, whether involving the Trustees or Countrywide as their agent." (Opp. at 15) Countrywide is a signatory to the Letters, and the Letters *contain an arbitration clause*. (Gaines Decl. [Doc. 21-3], Ex. B ¶ 15) As the Fourth Circuit noted in *Wachovia*, on which plaintiff heavily relies, "it is unfair for a party to 'rely on [a] contract when it works to its advantage, and repudiate it when it works to its disadvantage.'" *Wachovia Bank, N.A. v. Schmidt*, 445 F.3d 762, 769 (4th Cir. 2006) (citations omitted). Countrywide, by contrast, has been consistent in asserting that the Policies' dispute provisions govern, and in following those provisions.

## II. AFTER OPPOSING THIS MOTION, PLAINTIFFS HAVE ADMITTED IN CALIFORNIA THAT THIS ACTION MUST BE ARBITRATED

Plaintiff does not (because it cannot) dispute that its claims fall within the broad scope of the Bulk Policy's arbitration clause, which requires arbitration of "all" disputes "arising out of or related to" the Policy. Plaintiff has already admitted in its removal papers in California that this action arises out of the Bulk Policy, stating that the claims in the State Court action "are based on mortgage insurance policies that *give rise to the claims asserted in the North Carolina Action*." (Ellison Stay Decl., [Doc. 15] Ex. C, at 1)

Nevertheless, Plaintiff filed an opposition on May 18, 2009 that urged this Court there is no "underlying agreement between the parties to arbitrate." (Opp. [Doc. 20] at

2

15) Not only does that statement ignore the Commitment Letters' arbitration agreement, but nine days later plaintiff moved to compel Countrywide Home and Countrywide Servicing to arbitrate their claims in the State Court Action. Plaintiff bases its California motion on the same Bulk Policy arbitration clause on which Countrywide based its motion at bar. (Ellison Stay Reply Decl., Ex. B) Plaintiff's motion does not mention to the California court that plaintiff had opposed arbitration under the identical clause on the ground that Countrywide is not a signatory to the Bulk Policy.

Plaintiff was correct to admit arbitrability in California.[2] Plaintiff fails to address *American Bankers Insurance Group, Inc. v. Long*, 453 F.3d 623 (4th Cir. 2006), a case on all fours, and focuses instead on *Wachovia*, which is distinguishable. As Countrywide noted, *American Bankers* considered whether a non-signatory to an arbitration clause may equitably estop a signatory from denying the clause's applicability. The pivotal issue is whether the plaintiff "relies on" the contract with the arbitration clause, *i.e.*, "whether the plaintiff has asserted claims that, either *literally or obliquely*, assert a breach of a duty created by the contract containing the arbitration clause." *Id.* at 629 (emph. added). The Fourth Circuit held that even though the plaintiffs' "claims were based on theories of liability other than breach of the [Promissory] Note," the nonsignatory defendant could require the plaintiffs to arbitrate because their claims relied on the terms of the Note, which was subsequently incorporated into a subscription agreement containing an arbitration clause. *Id.* at 628-30. The court reasoned, "if [a non-party to the action] had never issued the Note, the [plaintiffs] would have no basis for recovery against [the non-signatory defendant]." *Id.* at 630.

---

[2] Countrywide acknowledged the Bulk Policy's arbitration clause applied to its State Court Action complaint, and explained that the only court claims it was bringing under that Policy were pursuant to the clause's exception for declaratory relief. (Ellison Decl, [Doc. 7] Ex. 1) Plaintiff does not claim its claims here fit in the clause's declaration relief exception. Its position (here, but not in California) is that the Policy's arbitration clause does not apply at all to a dispute between these parties.

3

Here, as in *American Bankers*, while plaintiff attempts to frame this action as based on the Commitment Letters, and not the Policies, plaintiff would have "no basis for recovery" against Countrywide if the Policies did not exist. United Guaranty seeks damages arising from claims paid under the Bulk Policies as well as relief from all future obligations under the Bulk Policies. Indeed, United Guaranty has instituted arbitration to rescind the Bulk Policies, based upon the same factual allegations it has made in this action. (Ellison Decl., Ex. B). United Guaranty must "reference" and "rely on" the Bulk Policies to make its case. Accordingly, under *American Bankers*, United Guaranty is estopped from circumventing the arbitration clause in the Bulk Policies.[3]

As to other alternative grounds to compel arbitration, Countrywide stands on its moving papers and adds two points. First, the Supreme Court has recently again reinforced non-signatory enforcement of arbitration agreements. *See Arthur Andersen LLP v. Carlisle*, 129 S. Ct. 1896, 1901-02 (2009) (reversing "Sixth Circuit's underlying determination that those who are not parties to written arbitration agreement are categorically ineligible for relief" and holding "[i]f a written arbitration provision is made enforceable against (or for the benefit of) a third party under state contract law, the statute's terms are fulfilled").

Second, in cases that uphold an agent's right to enforce its principal's arbitration agreement, North Carolina courts have relied on the need to prevent signatories to such an agreement from circumventing it. *See Brown v. Centex Homes*, 171 N.C. App. 741, 745-46, 615 S.E.2d 86, 88-89 (2005); *Collie v. Wehr Dissolution Corp.*, 345 F. Supp. 2d 555, 561 (M.D.N.C. 2004). Plaintiff has asserted the Trustees are liable for

---

[3] *Wachovia*, upon which United Guaranty primarily relies, by contrast did not permit a signatory to an arbitration clause to estop a non-signatory from denying applicability of the clause since the non-signatory had not sought a "direct benefit" from the contract containing the arbitration clause." *Id., citing R.J. Griffin*, 384 F.3d at 162. Because United Guaranty has relied on the Bulk Policies, it is estopped from denying the contract's arbitration clause.

4

Countrywide's Commitment Letter representations (Ellison Decl., [Doc. 7-3] ¶ 90), yet plaintiff has sued Countrywide based on those representations. That is circumvention.

It also bears noting that plaintiff's attempt to frame the action as brought under the Commitment Letters is not based on a reasonable construction of its claims. In addition to admitting in its California removal papers that the Policies "give rise to" its claims, plaintiff admitted in its opposition that the competing lawsuits arose from its decision that the Policies should be rescinded: "In early 2009, [United Guaranty] informed Countrywide it had discovered a systemic fraud in loans generated by Countrywide, and that these defects warranted rescission of the Policies." (Emphasis added.) As described in plaintiff's brief, at 5, moreover, it sued in its CA Federal Action for similar transactions under both the applicable Policies and the Commitment Letters. (Ellison Decl, [Doc. 7] Ex. 2) There is no principled distinction between this action and the CA Federal Action with respect to the significance of the Commitment Letters. Plaintiff cannot avoid arbitration through such artifice. *See, e.g., R.J. Griffin & Co. v. Beach Club II Homeowners' Ass'n, Inc.* 384 F.3d 157, 164 (4th Cir. 2004) (a party "may [not] use artful pleading to avoid arbitration.").

Accordingly, not only does plaintiff's motion to compel arbitration in California estop it from opposing this motion, but it is required to arbitrate in any event under the multiple grounds Countrywide asserted. Since the claims must be arbitrated, a stay of this litigation is warranted for that reason alone. 9 U.S.C. § 3.

## III. A STAY ALSO IS PROPER UNDER THE FIRST-FILED RULE OR *COLORADO RIVER*

**First-Filed Rule.** If the California court does not remand the State Court Action, a stay should follow under the first-filed rule. Although Plaintiff argues the rule "does not apply," this is another instance in which it contradicts itself. In California, to urge the higher burden that must be met to obtain a *Colorado River* stay, plaintiff's sister

5

company characterized the first-to-file rule as routine. (Ellison Reply Decl., Ex. E [Opp. Mot. Stay at 24]) Its current about-face fails to acknowledge that the proponent of the second-filed action must demonstrate a balance of convenience in favor of the second filed action to overcome the ordinary preference for the forum of first filed action. *See Ellicott Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974).

Countrywide has already addressed most of plaintiff's arguments. Plaintiff's claim that the actions are "not duplicative" is a product of its artificial attempt to style an action on the Commitment Letters that is separate from the Policies, but its admission in its California removal papers that the Policies "give rise to" the claims in this case acknowledged the *obvious* relationship between its claims and the Policies. (Ellison Stay Decl., [Doc. 7] Ex. C) The two actions are "duplicative" under the first-to-file rule because they simply offer competing views as to which parties breached their obligations arising from the same underlying transactions.

Plaintiff's claim that the Commitment Letters' choice of law clause precludes application of the first-to-file rule is wrong for the reasons stated—the clauses do not govern this post Policy, multi-Policy/Letters dispute. Its claim that the California court cannot decide this issue because "those Commitment Letters are not before the Court" [Opp. at 13-14] ignores that Plaintiff need only raise the issue and put the Letters before that court. That's the point of the first-to-file rule—let the first court decide.

Plaintiff's statement that the rule does not apply when the two actions are filed close in time misstates the law. As shown, the rule ordinarily applies unless the plaintiff meets a burden of demonstrating the balance of convenience favors the second-filed action. Since plaintiff did not meet that burden, the rule applies and warrants a stay if the California court does not remand. And if it does remand, the Court should stay the action under *Colorado River*.

***Colorado River.*** Given the adequacy of the state court forum to resolve all claims raised in this state-law based dispute, the issue boils down to whether plaintiff's proposal to break the dispute into multiple separate fragments presents only "ordinary piecemeal concerns" (Opp. at 9), or whether its proposal instead threatens a duplication of judicial resources and risk of inconsistent results of a magnitude sufficient to justify a stay.[4]

Contrary to plaintiff's spin, this is not a garden variety contract or tort case, but a dispute of *unusual* size and complexity. The magnitude of plaintiff's proposed waste and duplication of resources is well-illustrated by considering what will be required to adjudicate the parties' claims. Countrywide contends this dispute is an insurer's bad faith attempt to stonewall its insured to conserve capital for a parent in financial distress. That claim will require *each* court and arbitration panel that hears this action to examine why a claimed problem that plaintiff addressed for an extended period through a claim-by-claim rejection of coverage on particular loan files suddenly turned in early 2009 into a problem that supposedly justified plaintiff from walking away from all claims—including the

---

[4] Plaintiff devotes much space to misstating Countrywide's position as urging that a stay applicant need not show exceptional circumstances under *Colorado River*, then knocking down that strawman. Countrywide recited the exceptional circumstances requirement at the outset of its discussion (MPA at 10), then demonstrated this case meets it. But although exceptional circumstances are required either to stay or dismiss the action, there is a cognizable distinction between a stay and a dismissal. *See Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 900 (7th Cir. 1999) (although case for abstention was "not watertight," court of appeals nevertheless affirmed lower court's stay order, in part, because court was "mindful . . . that, rather than dismissing the action, the district court took the more measured step of staying the action"). That distinction is well-illustrated by a simple comparison of the difference in outcome in the parties' respectively cited cases when the court stayed, as opposed to dismissed the case. *Compare Vulcan Chem. Tech, Inc. v. Barker*, 297 F.3d 332, 340-41 (4th Cir. 2002) (stay was proper); *Lumen Constr. Inc. v. Brant Constr. Co.*, 780 F.2d 691, 695 (7th Cir. 1986) (granting abstention, but modifying dismissal to stay); *Ingersoll-Rand Fin. Corp. v. Callison*, 844 F.2d 133, 137 (3rd Cir. 1988) (affirming stay); *Covance Labs., Inc. v. Orantes*, 338 F. Supp. 2d 613, 619 (D. Md. 2004) (issuing stay); *Cross*, 176 F.Supp.2d at 463 (issuing stay); *Sokkia Credit Corp. v. Bush*, No. A.99-2480-GTV, 2000 WL 1472746, *3 (D. Kan. 2000) (issuing stay); *with Sto Corp. v. Lancaster Homes, Inc.*, 11 Fed. Appx 182, 186 (4th Cir. 2000) (reversing dismissal but affirming stay); *New Beckley Mining Corp. v. Intl's Union, UMWA*, 946 F.2d 1072, 1074 (4th Cir. 1991) (dismissal improper); *AXA Corp. Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272 (7th Cir. 2003) (dismissal improper).

7

large number of claims that even plaintiff concedes involve no fraud. This will require *each* court and arbitration panel that hears each of plaintiff's proposed pieces to scrutinize what files plaintiff reviewed, when it reviewed them, and how plaintiff conducted the review.

For its part, plaintiff asserts Countrywide engaged in a "systemic" fraud that goes beyond the rate of default on loans originated by other lenders, and that is not a product of the unprecedented run-up in housing prices and ensuing economic collapse. In addition, assuming this attack fails, there are still thousands of claims which have been explicitly or implicitly denied. In either case, *each* court that hears this action will have to sift through a vast volume of loan files to determine various issues raised by the claims and counterclaims in the case.

That extraordinary duplication of resources would be compounded by the risk that the various forums might reach different conclusions—a result that surely will *generate* additional litigation in a case that does not need that. The concern with inconsistent results is at the heart of *Colorado River*. The doctrine began with concern about the potential for inconsistency when multiple disputes related to the same property. *See Colorado River*, 424 U.S. at 818-19. *Colorado River* extended the doctrine to a water rights dispute to avoid potential inconsistent results in that area and expressed particular concern that inconsistent results would generate additional litigation. *Colorado River*, 424 U.S. at 819 (noting the federal policy to avoid piecemeal adjudication of water rights in a river system was "akin to that underlying the rule requiring that jurisdiction be yielded to the court first acquiring control of property, for the concern in such instances is with avoiding the generation of additional litigation through permitting inconsistent dispositions of property."). That inconsistency concern also applies when a party seeks to split claims based on a contract from an action involving the contract as well. *See Lumen Constr.*, 780 F.2d at 695-96.

8

The inconsistency concerns are particularly troubling here when one considers that the parties have asserted thirty-eight Policies covering billions of loans in this dispute. Moreover, the many instances in which plaintiff *already* has argued inconsistent points to different tribunals in these proceedings highlights the need for a stay. This dispute is at the tip of the iceberg at this juncture and the constantly revolving door of different positions urged in different forum to support whatever suits plaintiff at the moment can only magnify if these proceedings advance in parallel.

Plaintiff confirms the propriety of a stay by its failure to cite any case of comparable size and complexity that raised only state law issues and that held it was improper to stay a federal action in deference to a more comprehensive state case. It likewise confirms that a stay should issue by failing to distinguish *Lumens, Royal Globe* or any of the other cases that have allowed a stay based on concerns about piecemealing a substantial dispute. (*See* n. 4). Since this case is larger and more complex than any of those other ones, the interest in avoiding piecemealing is even more extraordinary here.

Plaintiff's remaining arguments bear only brief discussion. Its assertion that the actions are not parallel because the claims are different in the two actions is illogical. The claims are different only because plaintiff chose to spin off its claims into this Court rather than efficiently raise them as counterclaims in the more comprehensive State Court Action. *See Sto Corp.*, 11 Fed.Appx. at 187, finding state and federal actions parallel, despite absence of at least one party from federal action; s*ee also, Nakash v. Marciano*, 882 F.2d 1411, 1416-17 (9th Cir. 1989) (finding actions were "parallel" although parties had asserted different claims in different courts because each was raising its side of the story regarding the identical disputed transaction and "the federal action [was] but a spin-off of [the] more comprehensive state litigation.")

Plaintiff next minimizes the significance of the fact that its claims arise solely under state law. It ignores the cases that find this factor significant. *See Orantes*, 338 F.

9

Supp. 2d at 619;*Automated Sys. and Programming, Inc. v. Cross*, 176 F. Supp. 2d 458, 463 (D.Md. 2001). Instead, plaintiff emphasizes that *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 17 n.20 (1983) stressed the other side of the coin—the presence of federal law issues. But the Court did so because a stay in that case would have frustrated an important federal policy. Not only is that not true here, but the applicable federal policy—to reserve to the states the power over insurance matters—favors a stay. *See Colorado River,* 424 U.S. at 819 (stay was consistent with federal policy of authorizing states to adjudicate water rights).

In the end, the words of one court that issued a *Colorado River* stay are particularly apt: "It makes no sense to try and carve out one aspect of their dispute and try it separately, particularly since it is intertwined with the issues involved in the other aspects of their ongoing war." *Silvaco Data Sys., Inc. v. Tech. Modeling Assocs., Inc.*, 896 F. Supp. 973, 977 (N.D. Cal. 1995).

**Requested Resolution Of Motions**. Since the parties have made multiple filings after the onset of threshold motions and the circumstances have changed in some respects, Countrywide suggests the following order of consideration: The Court should order this case submitted to arbitration, and should stay the action pending arbitration. Irrespective of whether the Court orders arbitration, it should stay this action based on the first-to-file rule if the California federal court declines to remand the State Court Action., or, it should stay the action under *Colorado River* if that court remands that Action.

## CONCLUSION

The Court should compel arbitration and should in all events stay this action.

10

This the 5th day of June, 2009.

/s/ G. Michael Barnhill
W. Andrew Copenhaver, N.C. Bar #944
G. Michael Barnhill, N.C. Bar #9690
Debbie W. Harden, N.C. Bar #10576
**WOMBLE CARLYLE SANDRIDGE & RICE**
*A Professional Limited Liability Company*
One Wachovia Center, Suite 3500
301 South College Street
Charlotte, NC 28202
Telephone: (704) 331-4900
acopenhaver@wcsr.com
mbarnhill@wcsr.com
dharden@wcsr.com

OF COUNSEL:

David M. Halbreich
John N. Ellison
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
(215) 851-8100

Douglas E. Cameron
Traci S. Rea
**REED SMITH LLP**
435 Sixth Avenue
Pittsburg, PA 15219
(412) 288-3131

Jean M. Farrell
**REED SMITH LLP**
599 Lexington Avenue
22nd Floor
New York, NY 10022
(212) 521 5400

*Attorneys for Countrywide Financial Corp., and Countrywide Home Loans, Inc.*

11

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of June, 2009, I electronically filed Defendants' Reply Memorandum In Support Of Motion To Stay Based On Judicial Efficiency Grounds In Light Of Earlier-Filed And More Comprehensive Action, Or in the Alternative, To Compel Arbitration with the Clerk of Court using the CM/ECF System which will send notification of such filing to the following:

James T. Williams, Jr.
Robert A. Singer
Brooks, Pierce, McLendon, Humphrey & Leonard, LLP
Renaissance Plaza, Suite 2000
230 North Elm Street (27401)
Post Office Box 26000
Greensboro, NC 27420-6000
jwilliams@brookspierce.com
rsinger@brookspierce.com

/s/ G. Michael Barnhill
G. Michael Barnhill